Ray **MARSHALL**, Secretary of Labor, Plaintiff-Appellant and Cross-Appellee,

v.

**REGIS EDUCATIONAL CORPORATION**, Defendant-Appellee and Cross-Appellant.

Nos. 80–1835, 80–1798.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 1, 1981.

Decided Dec. 14, 1981.

A. Thomas Elliott, Jr., Corp. Legal Counsel, Regis College, Denver, Colo., for defendant-appellee and cross-appellant.

Before SETH and BREITENSTEIN, Circuit Judges, and KUNZIG,* Judge.

KUNZIG, Judge.

The Secretary of Labor brought suit against Regis Educational Corporation (Regis) (College) under Section 17 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 217. The Government alleged violations of the minimum wage and record-keeping provisions of the Act [1] claiming the provisions were applicable to student resident-hall assistants (RA's) at Regis College. The District Court held that RA's were not employees within the meaning of the statute.[2] The Secretary here appeals from this determination. We hold for the College. Resident-hall assistants are not employees within the meaning of the FLSA.

Regis College is a private four year institution of higher education in Denver, Colorado. In addition to its primary function of providing an academic program in the liberal arts, Regis offers certain support services and co-curricular programs to its students.[3] Among these is a student resident-hall assistant program which is the subject of this dispute.

The College requires all students who are not from the Denver area to reside in one of three residence halls. Consequently, the majority of Regis' 1,000 students lives on campus. Each hall is administered by a Residence Director who is accountable to the Director of Student Life.

Gregory O'Duden, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Washington, D. C., Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., Mary-Helen Mautner and Kerry L. Adams, U. S. Dept. of Labor, Washington, D. C., on brief), for plaintiff-appellant and cross-appellee.

---

* Honorable Robert L. Kunzig, of the United States Court of Claims, sitting by designation.

1. Fair Labor Standards Act of 1938, §§ 29 U.S.C. 206, 211(c) (1976).

2. In so determining, the District Court did not reach the constitutional arguments raised by defendant Regis in its motions for summary judgment. In cross-appeals, Regis here maintains that the District Court was in error in not reaching the constitutional issues and in not enforcing a purported settlement agreement.

3. Regis College, like most institutions of higher education, provides a range of ancillary programs which complement its primary academic function. These programs include support services such as health and counseling services and co-curricular programs such as athletics, student government, and student journalism.

During the years 1976–77, 1977–78, and 1978–79, the College was aided in its resident-hall program by some 47 students who served as RA's. RA's resided in the dormitories where they assisted the Residence Directors and actively participated in the development and implementation of programs designed to enhance the quality of resident-hall living. Students seeking appointment as RA's were required to submit applications for the position, and candidates were screened by a committee of administrators and students. Successful applicants participated in a training workshop prior to the beginning of the fall semester.

The duties of an RA during the academic year 1976–77 were specified in a written contract called an "employment agreement." Subsequent to an audit by the Department of Labor in November 1976, Regis entered into a Resident Assistant Grant-In-Aid agreement with each RA. The terms of this agreement, which avoided the words "employment" and "employee" were substantially the same as the "employment agreement." RA's were required to participate in training programs and were responsible for miscellaneous administrative tasks such as telephone coverage, mail distribution, unlocking doors and the like. RA's, moreover, had broader responsibilities in maintaining discipline and order within the halls and in encouraging participation in campus activities. Although RA's did not work a specified number of hours per day, they were generally available in the halls for an estimated twenty hours a week. In order to keep their status as RA's they were required to maintain a specified grade point average. In exchange for the performance of these duties, RA's received a reduced rate on their rooms, the use of a free telephone, and a $1,000 tuition credit.

The Government claims that the minimum wage and recordkeeping provisions of the FLSA were applicable to the RA's and alleges violations of the Act during the three year period, 1976–1979. The Secretary of Labor brought suit in federal District Court against Regis seeking the payment of back wages to RA's and an injunction enjoining Regis from future violations. In August 1979, trial was held before Judge Richard P. Matsch in the District of Colorado; after trial the Court dismissed the Secretary's suit, holding that RA's were not "employees" within the meaning of the FLSA. Judgment was entered in favor of Regis on May 29, 1980; subsequently the Secretary filed a timely appeal which is properly before this court under 28 U.S.C. § 1291.

The Government contends that RA's were "employees" because they received compensation and the College enjoyed an immediate economic benefit from their services. The Government emphasizes that RA's displaced employees whom Regis would otherwise have been required to hire. Regis counters that the primary purpose of the RA program was educational, that RA's at Regis were not "employees", but student-recipients of financial aid. The College rejects the argument that RA's displace other employees, stressing that the peer counseling and educational aspects of the resident assistant program would be lost if it were operated without students.

The question before us is whether these student RA's were "employees" within the meaning of the FLSA or were simply a separate category of students receiving financial aid.

Section 29 U.S.C. § 203 defines an "employee" as "any individual employed by an employer," and defines "employ" as "to suffer to permit to work." These definitions are, as the District Court observed, both "circular and all inclusive." *Marshall v. Regis Educational Corp.*, No. 78–M–93 at 3 (D.Colo. May 29, 1980). In order to make the definitions more functional and to clarify the scope of employee coverage under the FLSA, the District Court relied on the "economic reality" test announced in *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), wherein the Supreme Court declared that the deter-

mination of employment under the FLSA ought not depend on isolated factors but upon the "circumstances of the whole activity." 331 U.S. at 730, 67 S.Ct. at 1476. This test is controlling in the case at bar.

The Government urges that RA's were employees because their services had an immediate economic impact on the "business" of operating a college.[4] In so asserting, the Government views the College as being in the "business" of providing educational and support services and concludes that when the College enlists students to help in promoting safe and secure accommodations, it is, in fact, *employing* students. The College is deemed by the Government as being in the "business" of providing security for the learning environment.

We believe the Government's perspective to be so limited as to ignore not only the broad educational purpose of this private liberal arts college, but also the expressed educational objectives of the student resident assistant program. The Government's attempt to extend the scope of the FLSA to include full-time student RA's participating in this program goes beyond the statutory mandate and simply does not take into account the "totality of the circumstances."

Admittedly RA's provide certain services which facilitate the effective management of the resident-halls. Arguably some of these services could be performed by non-students, but these are isolated aspects of a total program which must be considered within the full educational context. *See, e.g., Bobilin v. Board of Education,* 403 F.Supp. 1095 (D.Hawaii 1975), wherein the court held that students performing cafeteria duties as mandated by the Board of Education were not employees under the FLSA because such duty had an educational value which was not inarguably frivolous. The mere fact that the College may have derived some economic value from the RA program does not override the educational benefits of the program and is not dispositive of the "employee" issue.

Furthermore, RA's did not displace other employees whom the College would otherwise have been required to hire. Despite testimony suggesting that it would be *possible* to operate the halls without RA's if some alternative provisions could be found for the security function, we are unpersuaded by the Government's argument which implies that the objectives of this program could be met by hiring non-students as "peer" counselors to advise, social directors to schedule activities and off-duty policemen to open doors and maintain discipline. On its face, such an arrangement does not present a reasonable alternative for this small private liberal arts college.[5]

Our holding that RA's are not employees does not require the conclusion that no student working at the College would be within the scope of the FLSA. No such inference should be drawn. There are undoubtedly campus positions which can be filled by students and which require compliance with the FLSA. Students working in the bookstore selling books, working with maintenance, painting walls, etc. could arguably be "employees". The query is whether the RA's at Regis are more like sales clerks or

4. In making its economic impact argument, the Government relies on *Walling v. Portland Terminal Co.,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed 809 (1947), wherein the Supreme Court, in deciding the "employment" issue for railroad trainees, considered whether the trainees' activities had resulted in immediate economic advantage *to the industry. The Government* places too much reliance on this isolated factor in the instant case. Under the test of *Rutherford, supra,* decided four months after *Portland Terminal,* we are required to look at *all* circumstances *in order to determine the "employee"* issue under the FLSA.

5. A more reasonable alternative for Regis would be for the College to eliminate the RA program and to operate the resident halls on a merely custodial basis. Conceivably this would be economically advantageous for Regis since the thousands of dollars annually expended in financial aid for RA's would then be available *for the general administration of the College.* It can be commented, in passing, that the RA's who were to have benefited by becoming "employees" under the Department of Labor's scenario might well be without "employment."

more like students in other campus programs receiving financial aid.

The record shows that student athletes who receive tuition grants are required to maintain a specified academic average and to fulfill certain duties with respect to training programs and to participate in sports events on campus; student leaders in the student government associations are similarly situated. Selected student leaders have specified duties and responsibilities and receive tuition credits. Upon consideration of this record, the District Court concluded:

> The RA's involved in this lawsuit did not come to Regis to take jobs. They enrolled as full-time students seeking growth and development from adolescents into mature human beings and desiring to earn the recognition of an academic degree. The opportunity to reduce the cost of their college by being helpful to other students and to the administration in assisting the residence hall program is only one circumstance in the whole activity of the college program. It does not differ from credits granted to student athletes and leaders in student government. Under the economic reality test, and considering the totality of the circumstances, the RA's were not "employees" of the defendant within the meaning of the FLSA. *Marshall v. Regis Educational Corp., supra,* at 4.

We agree with the District Court (considering the totality of the circumstances) in finding that RA's at Regis were legally indistinguishable from athletes and leaders in student government who received financial aid. We therefore hold that the RA's at Regis College were not "employees"

within the meaning of the Act, but student recipients of financial aid.[6]

Because we so hold, we do not reach the issues presented to us by defendant Regis on cross-appeal.[7]

Accordingly, after consideration of the record and the submissions of the parties, with oral argument of counsel, plaintiff's appeal is denied. The decision of the District Court is

AFFIRMED.

---

6. We recognize that our holding is at variance with that of the court in *Marshall v. Marist College,* 82 CCH Lab. Cas. 33, 561 (S.D.N.Y. 1977, not officially reported) a case involving similar facts. Insofar as the facts of *Marist* are not clearly distinguishable from those presented in the instant case, we believe that *Marist* was wrongly decided.

7. In its cross-appeals Regis maintains (1) that the application of the Act to RA's at Regis violated the College's First Amendment right to academic freedom; (2) that the characterizations of RA's as "employees" while excluding other students similarly situated in public colleges violated the due process clause of the Fifth Amendment; and (3) that the District Court erred in not enforcing a purported settlement agreement between the parties.