57 F.3d 1544
 130 Lab.Cas. P 33,272, 48 Soc.Sec.Rep.Ser. 248
 Michael C. JOHNS; and John Davies, individually and on
behalf of all other persons similarly situated,
Plaintiffs-Appellants,
and
Robert Witbeck, individually, Plaintiffs,
v.
Michael STEWART, in his capacity as Executive Director of
the Utah Department of Human Services; Emma
Chacon, in her capacity as Director of
the Office of Recovery
Services,
Defendants-
Appellees.
 No. 94-4161.
 United States Court of Appeals,
Tenth Circuit.
 June 20, 1995.
 
 Michael E. Bulson, (Thomas McWhorter with him on the brief) of Utah Legal Services, Inc., Ogden, UT, for plaintiffs-appellants.
 Billy L. Walker, Asst. Atty. Gen. (Jan Graham, Atty. Gen., Tamara K. Prince, Asst. Atty. Gen., with him on the brief), Salt Lake City, UT, for defendants-appellees.
 Before TACHA, ALDISERT,* and BALDOCK, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiffs Michael C. Johns and John Davies brought a class action suit on behalf of all persons who have received or will receive federal Supplemental Security Income ("SSI") benefits and who have had or will have some portion of their SSI benefits withheld by Defendants as reimbursement for public assistance provided to Plaintiffs by the State of Utah. Plaintiffs alleged Defendants, Michael Stewart and Emma Chacon, in their capacities as directors of the Utah Department of Human Services ("DHS") and Office of Recovery Services ("ORS"), respectively: (1) wrongfully withheld their SSI benefits, and (2) unlawfully compensated Plaintiffs below minimum wage for the hours they participated in two Utah public assistance programs. The district court granted Defendants' motion for summary judgment.
 
 I.
 
 2
 Congress established the SSI program in 1972 to provide cash grants to blind, disabled, or elderly persons (age 65 or older) with low income. 42 U.S.C. Secs. 1381-83. Congress failed to provide, however, a mechanism whereby eligible individuals could obtain immediate cash assistance. Persons who applied for SSI benefits with the Social Security Administration often waited months, and sometimes years, for a determination of eligibility while their applications were being processed. Although benefits were paid retroactively once a determination of eligibility was made, this did not help the individuals in the interim period while they were incurring living expenses. As a result, many states, including Utah, voluntarily established state assistance programs to help the individuals during that interim period.[1]
 
 
 3
 Utah established two programs to provide temporary, emergency assistance to needy persons: the Financial Assistance General Assistance/Self-Sufficiency Program ("GA") and Financial Assistance Emergency Work Program ("EWP"). Utah Admin.Code Secs. R810-216, R810-218 (1991 version); Utah-DHS-OFS Vol. II Secs. 808, 810 (1991 version) (hereinafter "Vol. II"). Plaintiffs are recipients of public assistance under Utah's GA and EWP programs.
 
 
 4
 GA provides temporary cash assistance to individuals with low income to help them meet their basic needs while they are qualifying for SSI. Utah Admin.Code Sec. R810-218-802(1); Vol. II Sec. 810. To obtain assistance under GA, one must complete an application for financial assistance at a local Office of Financial Services. Utah Admin.Code Sec. R810-214-401. To be eligible for GA, one must: (1) meet a needs test; (2) be "unemployable,"[2] "marginally employable"[3] or 60 years of age or older; and (3) agree to participate in rehabilitative and self-sufficiency activities. Id. at Secs. R810-218-802(1), (5)(c); Vol. II Sec. 810. Persons participating in GA complete a self-sufficiency plan with a case worker. Utah Admin.Code Secs. R810-218-810(6)(a). The self-sufficiency plan sets forth the various rehabilitative and self-sufficiency activities the individual will participate in, such as medical or mental health care programs, alcoholism or drug treatment programs, job search and job training activities, or a Work Experience and Training ("WEAT") project. Id. Participants required to perform a WEAT project as part of their self-sufficiency plan,[4] must participate in 96 hours per month of community work, adult education, and skills training activities. Id. at Secs. R810-212-212(4)(c); R810-218-810(10)(c), R810-212-212(5). In exchange for their participation in GA-WEAT, Utah provides persons $233 per month GA benefits plus an additional $45 per month WEAT work allowance.
 
 
 5
 In addition to other requirements, all GA participants must apply for SSI benefits from the Social Security Administration and follow through with efforts to obtain them. Utah Admin.Code Sec. R810-218-810(7)(a). SSI benefits are available for blind, disabled, and elderly persons with low income. 42 U.S.C. Sec. 1381, et seq.. Moreover, SSI benefits cannot be seized, executed, attached, levied, or reached by any other legal process by a state or other creditor. See 42 U.S.C. Sec. 407[5]; Philpott v. Essex County Welfare Bd., 409 U.S. 413, 415-16, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973). A state may recoup, however, "interim assistance"[6] it has provided to individuals under 42 U.S.C. Sec. 1383(g)(1). Specifically, Sec. 1383(g)(1) provides:
 
 
 6
 the Secretary [of Health and Human Services] may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State ... from the benefits withheld an amount sufficient to reimburse the State for interim assistance furnished on behalf of the individual by the State.[7]
 
 
 7
 Pursuant to this procedure, Utah requires all GA participants to complete a Form 75 "Agreement to Repay Interim Assistance," whereby the participants authorize Utah to recover public assistance provided to them out of their retroactive SSI benefits. Utah Admin.Code Secs. R810-218-810(8).
 
 
 8
 Plaintiff Davies applied for SSI benefits in February 1990.[8] In July 1991, while awaiting determination of his SSI benefit application, Davies applied for GA, met the needs test and was deemed otherwise qualified for GA. Davies completed Form 75 and specified that:
 
 
 9
 I, John E. Davies ... agree to have the Social Security Administration (SSA) send the first payment of my Supplemental Security Income (SSI) payment to the Utah State Department of Social Services (DSS), Office of Recovery Services (ORS).
 
 
 10
 I will repay the public assistance paid to me or paid in my behalf to meet my basic need while my application is pending with SSI. To do this, I agree that ORS will receive my first SSI check. This check will cover the time I will receive interim assistance. ORS will deduct the amount I received in interim assistance not financed by federal funds and refund my balance that may exist. ...
 
 
 11
 I understand that I will receive the amount of SSI that exceeds the interim payment of public assistance paid to me.
 
 
 12
 Aplt.App. at 79.[9] Davies developed a self-sufficiency plan with a case worker, which included a WEAT project. As a participant in WEAT, he was required to perform 96 hours per month of community work, adult education, and skills training activities. For the community work aspect of his WEAT project, Davies was assigned to drive a van transporting senior citizens for the Weber County Division of Aging. In all, Davies participated 750 hours in WEAT between July 1991 and May 1992. He received a total of $2,765 in GA benefits and WEAT work allowances, which Defendants concede amounts to less than minimum wage.
 
 
 13
 In April 1992, the Social Security Administration determined Davies was eligible for SSI benefits and mailed an $8,407.33 benefits check to the ORS. Pursuant to Sec. 1383(g)(1) and Davies' written authorization supplied in Form 75, the ORS withheld $2,765 of Davies' SSI benefits check as reimbursement for GA-WEAT benefits provided to him, and remitted to him the $5,642.33 balance.
 
 
 14
 Like GA-WEAT, EWP is a Utah public assistance program that provides temporary[10] cash assistance to individuals to help them meet their basic needs in exchange for their participation in a broad range of adult education, short-term skills training, community work and job search activities. Utah Admin.Code Sec. 810-216-601(2); Vol. II Sec. 808. To obtain assistance under EWP, one must complete an application for financial assistance at a local Office of Financial Services. Utah Admin.Code Sec. R810-214-401. To be eligible as an individual participant, a person must meet a needs test, have no dependent children, be able to perform a work project, and agree to comply with EWP participatory standards. Id. at Sec. R810-216-601, 620; Aplee.Supp.App. at 159. Specifically, persons in EWP are required to perform thirty-two hours per week of community work, adult education, and skills training activities, and eight hours per week of job search activities. Id. at Sec. R810-216-620(8); Vol. II Sec. 808.27. In exchange, Utah provides EWP participants $130 bi-weekly assistance (for a single individual in 1991). Utah Admin.Code Sec. R810-216-660(1).
 
 
 15
 Plaintiff Johns applied for assistance, met the needs test, was deemed otherwise qualified for EWP, and agreed to comply with EWP participatory requirements. Aplt.App. at 50. For his community work project, Johns was assigned in September 1990 to perform maintenance and painting duties at the Brigham City Corporation ("BCC"). In October 1990, Johns fell from a ladder while painting at BCC and sustained injuries leading him to apply for SSI benefits. Johns participated 413 total hours in EWP through January 1991 and received $1,124 EWP benefits, which Defendants concede amounts to less than minimum wage.
 
 
 16
 Johns withdrew from EWP in January 1991 as a result of a hernia and applied in February 1991 for GA benefits. Johns was approved for GA benefits (but not assigned to WEAT) and completed Form 75. Aplt.App. at 52-53. Between February and May 1991, Johns received $542.14 in GA benefits.
 
 
 17
 In May 1991, the Social Security Administration notified Johns that he had been approved for SSI benefits and mailed a $1,647.94 SSI benefits check to the ORS. Pursuant to Sec. 1383(g)(1) and Johns' written authorization supplied in Form 75, the ORS initially withheld all of Johns' $1,647.94 SSI benefits check as reimbursement for $1,666.14 in EWP and GA benefits provided to him. Aplt.App. at 76. The ORS later sent Johns $680 for reasons not made clear by the record and retained the balance of his SSI benefits check. Aplee.Supp.App. at 147.
 
 
 18
 In July 1992, Plaintiffs brought a class action suit against Defendants. In their first amended complaint, Plaintiffs alleged Defendants violated: (1) the Social Security Act ("SSA"), 42 U.S.C. Secs. 407, 1383, by wrongfully withholding Plaintiffs' SSI benefits as reimbursement for GA-WEAT and EWP benefits provided to Plaintiffs; (2) the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. Sec. 206, by paying Plaintiffs less than minimum wage for the hours they participated in EWP and GA-WEAT; and (3) the Utah Administrative Rulemaking Act ("UARA"), Utah Code.Ann. Sec. 63-46a-1, et seq., by implementing a policy to withhold EWP and GA-WEAT benefits without first submitting the policy to rule making.[11] Aplt.App. at 13-15.
 
 
 19
 Plaintiffs requested the court to certify the suit as a class action and order appropriate notice be given to class members. On March 7, 1994, the parties filed a stipulation and agreement for partial settlement with the court. The parties agreed to the court's certification of class[12] and the partial settlement of Plaintiffs' claims.[13] The court approved the partial settlement and ordered the parties to submit the unresolved issues on cross-motions for summary judgment.
 
 
 20
 In their motion for summary judgment, Plaintiffs asserted that: (1) Defendants' practice of withholding SSI benefits as reimbursement for GA-WEAT benefits violated Sec. 407 of the SSA because GA-WEAT benefits do not constitute "interim assistance" pursuant to Sec. 1383(g)(1); (2) Defendants violated Sec. 206 of the FLSA by paying Plaintiffs less than minimum wage for the hours they participated in EWP and GA-WEAT; (3) Defendants violated the UARA by implementing a policy to withhold EWP and GA-WEAT benefits without first submitting the policy to rule making; and (4) Form 75 is void under state and federal contract law because it fails to define essential terms.[14] Plaintiffs sought declaratory and injunctive relief under each of their claims, retroactive monetary reimbursement of their withheld assistance benefits and notice to class members of the outcome of the litigation. In their motion for summary judgment, Defendants denied Plaintiffs' claims.
 
 
 21
 The district court ruled in favor of Defendants on all issues. The court held that GA-WEAT benefits provided to Plaintiffs constituted "interim assistance" pursuant to Sec. 1383(g)(1). The court further ruled Defendants were not required to compensate Plaintiffs at minimum wage for their participation in EWP and GA-WEAT because Plaintiffs were not "employees" for purposes of the FLSA. Lastly, the court concluded Defendants did not violate the UARA and that the Form 75 contracts signed by Plaintiffs were not void. Aplt.App. at 121-23. The court therefore granted Defendants' motion and entered summary judgment against Plaintiffs. This appeal followed.
 
 II.
 
 22
 On appeal, Plaintiffs re-assert the arguments they made in their motion for summary judgment. At the outset we note that because Plaintiffs have brought suit in federal court against Defendants in their official capacities as directors of Utah state agencies, Plaintiffs' suit may be barred in part or whole by the Eleventh Amendment. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Although Defendants have not posed an Eleventh Amendment bar, we may examine sua sponte whether the Eleventh Amendment bars Plaintiffs' claims. Mascheroni v. Board of Regents of Univ. of California, 28 F.3d 1554, 1559 (10th Cir.1994); see also Pennhurst, 465 U.S. at 99 n. 8, 104 S.Ct. at 907 n. 8 (Eleventh Amendment deprives federal courts of jurisdiction to hear claims against state and thus may be raised at any stage of the proceedings).
 
 
 23
 The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Even though the clear language does not so provide, the Eleventh Amendment has been interpreted to bar a suit by a citizen against the citizen's own State in Federal Court." AMISUB (PSL), Inc. v. State of Colorado Dep't of Social Servs., 879 F.2d 789, 792 (10th Cir.1989) (citing Hans v. State of Louisiana, 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890)). Thus, the Eleventh Amendment bars a suit brought in federal court by the citizens of a state against the state or its agencies, Pennhurst, 465 U.S. at 100, 104 S.Ct. at 908, and applies " 'whether the relief sought is legal or equitable.' " Ramirez v. Oklahoma Dept. of Mental Health, 41 F.3d 584, 588 (10th Cir.1994) (quoting Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986)).
 
 
 24
 The Eleventh Amendment does not, however, bar a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law. Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908); In re Crook, 966 F.2d 539, 542 (10th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 491, 121 L.Ed.2d 430 (1992). The Ex parte Young exception enables federal courts to end continuing violations of federal law by state officials, Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1986), so as "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.' " Pennhurst, 465 U.S. at 105, 104 S.Ct. at 910 (quoting Ex Parte Young, 209 U.S. at 160, 28 S.Ct. at 454). Because Ex parte Young is designed to end continuing violations of federal law, when there is "no ongoing violation of federal law," Green, 474 U.S. at 66, 106 S.Ct. at 425, "a suit against a state officer--a suit the decision of which will as a practical matter bind the state--should be treated for what it is: a suit against the state." Watkins v. Blinzinger, 789 F.2d 474, 484 (7th Cir.1986), cert. denied, 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987); see also Green, 474 U.S. at 66-74, 106 S.Ct. at 425-29.
 
 
 25
 Thus, the Eleventh Amendment bars a suit against a state official "when 'the state is the real, substantial party in interest.' " Pennhurst, 465 U.S. at 101, 104 S.Ct. at 908 (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). A suit for retroactive monetary reimbursement of withheld assistance benefits brought against a state official in his official capacity is a suit against the state because the funds to satisfy the award "must inevitably come from the general revenues" of the state. Edelman v. Jordan, 415 U.S. 651, 665, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); see also Ford, 323 U.S. at 464, 65 S.Ct. at 350 ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest ... even though individual officials are nominal defendants."). Thus, the Eleventh Amendment bars: (1) a suit for retroactive monetary reimbursement of withheld assistance benefits, (2) brought by citizens of a state, (3) against state officials in their official capacities, (4) in federal court. Edelman, 415 U.S. at 662-71, 94 S.Ct. at 1355-60.
 
 
 26
 In addition, the Eleventh Amendment bars suits brought in federal court seeking to enjoin a state official from violating state law. Pennhurst, 465 U.S. at 104-06, 104 S.Ct. at 910-11. In such a case, the "need to promote the supremacy of federal law" underlying the Ex Parte Young exception is absent. Id. at 106, 104 S.Ct. at 911. Indeed, the Court has noted "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Id.
 
 
 27
 Moreover, neither notice[15] nor declaratory relief is the "type of remedy designed to prevent ongoing violations of federal law." See Green, 474 U.S. at 70-74, 106 S.Ct. at 427-29. Thus, the Eleventh Amendment bars a federal court from ordering notice relief in a suit against the state, unless it is ancillary to a judgment awarding prospective injunctive relief. Id. The Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., --- U.S. ----, ----, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993).
 
 
 28
 However, "[t]he sovereign immunity afforded by the Eleventh Amendment is not absolute." AMISUB, 879 F.2d at 792; Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). A state may waive its Eleventh Amendment immunity and consent to suit in federal court. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). In addition, Congress may abrogate the states' Eleventh Amendment immunity. Id. "[B]ecause the Eleventh Amendment implicates the fundamental constitutional balance between the Federal Government and the States," id. at 238-39, 105 S.Ct. at 3145, the court applies a stringent test to determine if the exceptions are met. See Pennhurst, 465 U.S. at 99-100, 104 S.Ct. at 907-908. Thus, any waiver by the state of its Eleventh Amendment immunity must be unequivocal, Pennhurst, 465 U.S. at 99, 104 S.Ct. at 907--i.e., a state may waive its Eleventh Amendment immunity "only where stated 'by the most express language or by such overwhelming implication from the text [of a state statutory or constitutional provision] as [will] leave no room for any other reasonable construction.' " Atascadero, 473 U.S. at 239-40, 105 S.Ct. at 3146 (quoting Edelman, 415 U.S. at 673, 94 S.Ct. at 1360). Constructive consent is insufficient. Edelman, 415 U.S. at 673, 94 S.Ct. at 1360. Congress may abrogate the states' Eleventh Amendment immunity from suit in federal court "only by making its intention unmistakeably clear in the language of the statute." Id. at 242, 105 S.Ct. at 3147. With these Eleventh Amendment principles in mind, we address the jurisdictional propriety of Plaintiffs' claims.
 
 III.
 A.
 
 29
 Plaintiffs' SSA claim seeks, in part, retroactive monetary reimbursement of withheld SSI benefits from Defendants in their official capacities as directors of state agencies. A claim for retroactive monetary reimbursement asserted against state officials in their official capacities constitutes a suit for monetary damages against the state. Edelman, 415 U.S. at 665, 94 S.Ct. at 1356. Absent waiver or congressional abrogation, this portion of Plaintiffs' SSA claim is barred by the Eleventh Amendment. Id. at 662-71, 94 S.Ct. at 1355-59.
 
 
 30
 We have found no Utah statutory or constitutional provision that expressly waives the state's Eleventh Amendment immunity with respect to claims seeking reimbursement of withheld SSI benefits.[16] Although Utah has several general consent to suit provisions in its Governmental Immunity Act, Utah Code Ann. Sec. 63-30-1 to 63-30-38, which waive its immunity to suits brought in Utah state courts,[17] "a state's consent to be sued in the state's own courts does not serve to waive its Eleventh Amendment immunity." Richins v. Industrial Constr., Inc., 502 F.2d 1051, 1055 (10th Cir.1974); see also Port Auth., 495 U.S. at 306, 110 S.Ct. at 1873 (same). Indeed, Utah law expressly provides that its state district courts have exclusive original jurisdiction over suits brought against it. Utah Code Ann. Secs. 63-30-16. This provision clearly evidences Utah's intent to retain its Eleventh Amendment immunity. Richins, 502 F.2d at 1055 (Utah's statutory provision that suits against it be brought in its own courts "is a positive expression of policy against suits against Utah in United States Courts.").
 
 
 31
 In addition, because constructive consent is insufficient, Edelman, 415 U.S. at 674, 94 S.Ct. at 1361, Utah's partial settlement of claims in the instant case does not constitute waiver of its Eleventh Amendment immunity. See Saahir v. Estelle, 47 F.3d 758, 762 (5th Cir.1995) (state's participation in settlement agreement insufficient to constitute waiver of its Eleventh Amendment immunity); Mascheroni, 28 F.3d at 1560 (state's participation in suit insufficient to constitute waiver of Eleventh Amendment immunity). We find no unequivocal expression of waiver by Utah in the instant case. Pennhurst, 465 U.S. at 99, 104 S.Ct. at 907.
 
 
 32
 Moreover, Congress has not abrogated the states' sovereign immunity with respect to claims for withheld SSI benefits in any provision of the Social Security Act. See Edelman, 415 U.S. at 674, 94 S.Ct. at 1361 (no provision of Social Security Act provides for waiver of state's Eleventh Amendment immunity); Granados v. Reivitz, 776 F.2d 180, 183 (7th Cir.1985) ("Nor were we able to find in the Social Security Act any indication of congressional intent to waive the state's immunity to suit in federal court.").
 
 
 33
 As a result, the portion of Plaintiffs' SSA claim that seeks retroactive monetary reimbursement of withheld assistance benefits from Defendants is barred by the Eleventh Amendment. Edelman, 415 U.S. at 662-71, 94 S.Ct. at 1355-60; Green, 474 U.S. at 68, 106 S.Ct. at 425; P.R. Aqueduct, --- U.S. at ----, 113 S.Ct. at 688. We therefore dismiss this portion of Plaintiffs' SSA claim. Mascheroni, 28 F.3d at 1560. We remand with instructions to the district court to vacate its judgment as to this portion of Plaintiffs' SSA claim and dismiss for lack of jurisdiction. Id.
 
 B.
 
 34
 Plaintiffs seek a declaration that Defendants violated the SSA in the past by withholding Plaintiffs' SSI benefits as reimbursement for GA-WEAT benefits provided to them. Because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past," P.R. Aqueduct, --- U.S. at ----, 113 S.Ct. at 688, we dismiss the declaratory portion of Plaintiffs' SSA claim. Id. We remand with instructions to the district court to vacate its judgment as to the declaratory portion of Plaintiffs' SSA claim and dismiss for lack of jurisdiction. Id.
 
 C.
 
 35
 On the other hand, the portion of Plaintiffs' SSA claim that seeks to prospectively enjoin Defendants from violating the SSA constitutes a suit against state officials in their official capacities to prevent the ongoing violation of federal law. This claim, therefore, falls within the Ex parte Young exception and is not barred by the Eleventh Amendment. Ex parte Young, 209 U.S. at 159-60, 28 S.Ct. at 454. As a result, we address the prospective portion of Plaintiffs' SSA claim on the merits.
 
 
 36
 Plaintiffs contend the district court erred in granting Defendants' motion for summary judgment because Defendants have violated and are violating Sec. 407 of the SSA. Specifically, Plaintiffs contend that Defendants cannot withhold their SSI benefits consistent with Sec. 407, which prevents SSI benefits from being subject to "execution, levy, attachment, garnishment, or other legal process." See Philpott, 409 U.S. at 415-16, 93 S.Ct. at 592. While Plaintiffs acknowledge that Sec. 1383(g)(1) carves out an exception to Sec. 407 that allows states to reimburse themselves "for interim assistance furnished on behalf of the individual by the State" out of an individual's retroactive SSI benefits check, Plaintiffs maintain that GA-WEAT benefits do not constitute "interim assistance" pursuant to Sec. 1383(g)(1). Because GA-WEAT benefits do not constitute "interim assistance," Plaintiffs contend Defendants violate Sec. 407 by withholding their SSI benefits as reimbursement for GA-WEAT benefits provided.
 
 
 37
 The district court concluded GA-WEAT benefits constitute "interim assistance" pursuant to Sec. 1383(g)(1) and granted Defendants' motion for summary judgment. We review the district court's grant or denial of summary judgment de novo. Reich v. Parker Fire Protection Dist., 992 F.2d 1023, 1026-27 (10th Cir.1993). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 38
 Plaintiffs' argument that GA-WEAT benefits do not constitute "interim assistance" within the meaning of Sec. 1383(g)(3) presents a question of statutory interpretation. "In interpreting a statute, our initial inquiry begins with the language of the statute and if that language is clear, we give effect to its meaning." Phillips Petroleum Co. v. Lujan, 4 F.3d 858, 861 (10th Cir.1993). Only if after "employing traditional tools of statutory construction," Chevron, U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984), we cannot discern congressional intent, do we need turn to the agency's construction of the statute. Id. at 843, 104 S.Ct. at 2782; K MART Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988).
 
 
 39
 "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary ... meaning." Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); Bartlett v. Martin Marietta Operations Support, Inc., 38 F.3d 514, 518 (10th Cir.1994) ("The court is obliged to give terms their plain meaning whenever possible."). Thus, we will not restrict the plain meaning of the language chosen by Congress absent "clearly expressed legislative intent to the contrary." United States v. Turkette, 452 U.S. 576, 580-81, 593, 101 S.Ct. 2524, 2527, 2533, 69 L.Ed.2d 246 (1981).
 
 
 40
 Section 1383(g)(3) defines "interim assistance" as "assistance financed from State or local funds and furnished for meeting basic needs." 42 U.S.C. Sec. 1383(g)(3) (emphasis added). Plaintiffs concede GA-WEAT benefits are "financed from State or local funds." Pl.Br. at 13. Plaintiffs argue, however, that GA-WEAT benefits are not "furnished" because they earn their benefits by working for them. Plaintiffs contend that the term "furnish" implies a gift and cite the Secretary of Health and Human Services' definition of interim assistance as support: "Interim assistance means assistance the State gives you." 20 C.F.R. Sec. 416.1902 (emphasis added). Plaintiffs argue that Utah does not give GA-WEAT participants their benefits; instead, participants must work for and earn the benefits. As a result, GA-WEAT benefits are not "furnished" to Plaintiffs and therefore do not constitute interim assistance under Sec. 1383(g)(3).
 
 
 41
 We reject Plaintiffs' argument because it is premised upon an artificially narrow construction of the plain, unambiguous meaning of the term "furnish." Black's Law Dictionary defines furnish as "[t]o supply, provide, or equip, for accomplishment of a particular purpose." Black's Law Dictionary 466 (6th ed. 1990). Webster's dictionary defines furnish as "to provide with what is needed" and lists as synonyms "supply" and "give." Webster's Ninth New Collegiate Dictionary 498 (1984). Applying these definitions, Utah supplies or provides GA-WEAT participants benefits for accomplishment of meeting their basic needs and helping them become self-sufficient. Thus, GA-WEAT benefits are "furnished" to its participants under the plain meaning of that term. As the district court noted:
 
 
 42
 State funded General Assistance granted to General Assistance Work Experience and Training (GA-WEAT) participants is interim assistance under the federal statutes and regulations and therefore recoverable from a participants' retroactive SSI award. GA-WEAT is state-funded assistance based upon need. The fact that it contains a self-sufficiency component does not take it out of the plain meaning of the federal Interim Assistance Reimbursement program (IAR). The IAR couches the authorization in terms of recovery of interim assistance furnished on behalf of the individual by the state. The plain and statutory meaning of the word "furnish" can clearly encompass assistance given under the terms of GA-WEAT.
 
 
 43
 Aplt.App. at 121. We agree. Simply because participants perform a work component as one requirement of their assistance plans does not change the nature of the assistance as provided to them to meet their basic needs.
 
 
 44
 Moreover, we must apply the term "furnish" according to its ordinary meaning and not restrict its definitional scope in the absence of "clearly expressed legislative intent to the contrary." Turkette, 452 U.S. at 580-81, 101 S.Ct. at 2527; Perrin, 444 U.S. at 42, 100 S.Ct. at 314. We find nothing in the language of Sec. 1383, its legislative history, or interpretive case law to indicate that Congress intended to restrict the definitional scope of the term "furnish" to exclude benefits provided to "workfare" participants. Turkette, 452 U.S. at 580-81, 101 S.Ct. at 2527. Because congressional intent is clear from the plain language of Sec. 1383, we give effect to that intent and do not turn to the Secretary's definition of "interim assistance."[18] Turkette, 452 U.S. at 580-81, 101 S.Ct. at 2527; Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."). We hold the district court correctly concluded that benefits provided to GA-WEAT participants are "furnished" to them and therefore constitute "interim assistance" under Sec. 1383(g)(1). We therefore hold Utah may properly withhold, from Plaintiffs' SSI benefits, amounts sufficient to reimburse it for GA-WEAT benefits provided.
 
 IV.
 
 45
 Plaintiffs' FLSA claim seeks both declaratory and injunctive relief. The declaratory portion of Plaintiffs' claim is not barred by the Eleventh Amendment because Congress has abrogated the states' Eleventh Amendment immunity with respect to claims brought under the FLSA. Brinkman v. Department of Corrections of Kan., 21 F.3d 370, 372 (10th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994). We therefore turn to the merits of Plaintiffs' FLSA claim.
 
 
 46
 Plaintiffs contend the district court erred in granting Defendants' motion for summary judgment because the FLSA mandates Defendant DHS compensate them at minimum wage for the hours they participate in GA-WEAT and EWP. Specifically, Plaintiffs contend that, as participants in GA-WEAT and EWP programs, DHS is their "employer" and they are DHS's "employees" within the meaning of Sec. 203 of the FLSA. Thus, Sec. 206 of the FLSA mandates DHS compensate them at minimum wage. See 29 U.S.C. Sec. 206(a)(1) ("employer" required to pay his "employee" a minimum wage--currently $4.25 per hour). We disagree.
 
 
 47
 We review the district court's grant or denial of summary judgment de novo. Reich, 992 F.2d at 1026-27. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review de novo the district court's determination whether an individual qualifies as an employee for purposes of the FLSA. Dole v. Snell, 875 F.2d 802, 805 (10th Cir.1989).
 
 
 48
 Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." Id. at Sec. 203(d). A "public agency" is, inter alia, any agency of a State. Id. at Sec. 203(x). Because DHS is a public agency of the State of Utah, it qualifies as an "employer" for purposes of the FLSA. Thus, the determinative question is whether Plaintiffs qualify as "employees" of DHS for purposes of the FLSA.
 
 
 49
 Whether Plaintiffs constitute "employees" of DHS for purposes of the FLSA presents a question of statutory interpretation. We begin with the plain language of the FLSA. Phillips, 4 F.3d at 861. Under the FLSA, an "employee" is "any individual employed by an employer."[19] Id. at Sec. 203(e)(1). "Employ" is defined as to "suffer or permit to work." Id. at Sec. 203(g). Thus, an employee is an individual who an employer suffers or permits to work. The definition "suffer or permit to work" was intended to make the scope of employee coverage under the FLSA very broad. See United States v. Rosenwasser, 323 U.S. 360, 362, 363 n. 3, 65 S.Ct. 295, 296, 297 n. 3, 89 L.Ed. 301 (1945) (quoting statement of then Senator Hugo Black that the term "employee" as used in the FLSA "had been given 'the broadest definition that has ever been included in any one act.' ") (citation omitted). Courts have interpreted the definition of employee broadly in order to effectuate the broad remedial purposes of the FLSA. Dole, 875 F.2d at 804. The Supreme Court has noted, however, that although the FLSA's definition of "employee" is quite broad, "it does have its limits." Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295, 105 S.Ct. 1953, 1958, 85 L.Ed.2d 278 (1985). Thus, although some persons are literally "suffer[ed] or permit[ted] to work," they do not qualify as "employees" for purposes of the FLSA. See Marshall v. Regis Educ. Corp., 666 F.2d 1324, 1328 (10th Cir.1981) (resident-hall assistants did not constitute employees of Regis College for purposes of the FLSA); Reich, 992 F.2d at 1026-27 (persons training to be firefighters did not constitute employees of fire protection district for purposes of the FLSA); Dole, 875 F.2d at 812 (independent contractors do not constitute employees for purposes of the FLSA).
 
 
 50
 Because the definition of "employee" under the FLSA is broad, but not precise, courts apply the Supreme Court's "economic reality" test to determine the scope of employee coverage under the FLSA in particular cases. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1966); Dole, 875 F.2d at 804. Under that test, we focus "upon the circumstances of the whole activity," Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947), with the ultimate criterion being the economic reality of the relationship. Goldberg, 366 U.S. at 33, 81 S.Ct. at 936; Doty v. Elias, 733 F.2d 720, 722 (10th Cir.1984).
 
 
 51
 In Marshall, we applied the economic reality test to determine whether student resident-hall assistants ("RA's") were employees of Regis College ("Regis") for purposes of the FLSA. At Regis, the RA's were required to distribute mail, answer phones, unlock doors, maintain discipline in the halls, be available twenty hours a week, and maintain a specified grade point average. In exchange, Regis gave them a reduced room rate, free telephone use, and a $1,000 tuition credit. Marshall, 666 F.2d at 1326.
 
 
 52
 The Secretary of Labor brought suit against Regis alleging that the college violated the FLSA by, inter alia, failing to compensate the RA's at minimum wage for their services. The Secretary argued that the RA's were employees because their services economically benefited Regis. Id. at 1326-27. We disagreed, however, and explained that the government's view ignored the "expressed educational objectives of the student resident assistant program" and did not focus upon the whole circumstances of the activity. We noted that although the RA's services benefited Regis, the relationship between the RA's and Regis must be considered in light of the educational context. Id. at 1327. We quoted the reasoning of the district court:
 
 
 53
 The RA's ... did not come to Regis to take jobs. They enrolled as full-time students seeking growth and development ... and desiring to earn the recognition of an academic degree. The opportunity to reduce the cost of college by being helpful to other students and to the administration in assisting the residence hall program is only one circumstance in the whole activity.
 
 
 54
 Id. at 1328. Thus, the students' participation in the RA program was simply one component of their entire educational experience. Focusing upon the circumstances of the whole activity and applying the economic reality test, we concluded that the students who participated in the RA program were not employees of Regis for purposes of the FLSA. Id.
 
 
 55
 Marshall's reasoning compels a similar result in the instant case. As in Marshall, Plaintiffs' narrow focus on the work component of the GA-WEAT and EWP programs fails to take into consideration the circumstances of the whole activity. The work component of GA-WEAT and EWP is just one requirement of the comprehensive assistance programs. GA-WEAT and EWP recipients are also required to: (1) meet a needs test; (2) be unemployable, marginally employable, or 60 years old or older (for GA); (3) have no dependent children and be able to perform a work project (for EWP); and (4) agree to participate in adult education, training, skills development, and job search activities. All of these requirements are conditions for receipt of benefits under GA-WEAT and EWP. Utah Admin.Code Secs. R810-218-810(10)(c), R810-212-212(5). Applying Marshall, Plaintiffs participation in WEAT and EWP work projects is simply one component of their comprehensive assistance plans. The overall nature of the relationship between Plaintiffs and Defendants is assistance, not employment.
 
 
 56
 Indeed, GA-WEAT and EWP participants are completely unlike state employees in every respect. GA-WEAT and EWP participants apply for public assistance, not for a state job. GA-WEAT and EWP participants receive their financial assistance checks through the Public Assistance Case Management Information System, not from the state payroll. Aplee.Supp.App. at 149, 165-66. State and federal taxes are not withheld from GA-WEAT and EWP participants' benefits as they are from state employees' salaries. Aplee.Supp.App. at 148, 199, 200-01. GA-WEAT and EWP participants do not accrue sick or annual leave like state employees. Id. at 149. In sum, as we noted in Klaips v. Bergland, 715 F.2d 477 (10th Cir.1983):
 
 
 57
 [W]e cannot accept plaintiffs' argument that the relationship between [Utah] ... and the WEAT participants ... [is] that of employer to employee.... [A]lthough WEAT participants may perform the same functions as regular employees at some of the projects to which they are assigned, they differ from state employees in that they do not receive the same salary, safe working conditions, job security, career development, Social Security, pension rights, collective bargaining, or grievance procedures as do the actual employees.
 
 
 58
 Id. at 483.[20] Although Klaips referred only to WEAT participants, its reasoning applies with equal force to EWP. Aplee.Supp.App. at 149 (affidavit of David Moffitt, program specialist for EWP and GA-WEAT). Focusing upon the circumstances of the whole activity and applying the economic reality test, we hold the district court correctly concluded that Plaintiffs are not employees of DHS for purposes of the FLSA. See Marshall, 666 F.2d at 1328; Rutherford, 331 U.S. at 730, 67 S.Ct. at 1477.[21]
 
 V.
 
 59
 Plaintiffs' UARA claim asserts that Defendants violated Utah state rule making procedures by implementing a policy to withhold SSI benefits as reimbursement for GA-WEAT and EWP benefits provided without first submitting the policy to rule making procedures. Because this claim asserts that Defendants have violated state law alone, it is barred by the Eleventh Amendment. Pennhurst, 465 U.S. at 104-06, 104 S.Ct. at 910-11. We therefore dismiss Plaintiffs' UARA claim. We remand for the district court to vacate its judgment as to Plaintiffs' UARA claim and dismiss for lack of jurisdiction. Mascheroni, 28 F.3d at 1560.
 
 VI.
 
 60
 Finally, Plaintiffs claim that the Form 75 contracts are void under state and federal contract law because they fail to define essential terms-- i.e., "public assistance" and "interim assistance." To properly bring their claim under Ex Parte Young, Plaintiffs must assert an ongoing violation of a federal right. Pennhurst, 465 U.S. at 104-06, 104 S.Ct. at 910-11. Plaintiffs do not claim that Defendants are violating the United States Constitution or a federal statute. Instead, Plaintiffs assert violations of federal common law. Plaintiffs have identified no case, however, holding that under the application of federal common law, an interim assistance authorization that fails to define essential terms is void.[22] Plaintiffs cite Respect Inc. v. Committee on the Status of Women, 781 F.Supp. 1358 (N.D.Ill.1992) for the proposition that a contract lacking essential terms is void. The Respect case applied Illinois contract law to a contract-based claim pendent to federal copyright, trademark, and Lanham Act claims. Id. at 1364-65. Respect does not, however, support Plaintiffs' claim that federal contract law governs the validity of the Form 75 authorizations. As a result, Plaintiffs' contract claim fails to identify an ongoing violation of a federal right. Instead, Plaintiffs essentially allege various defects in the Form 75s under state contract law. The Eleventh Amendment therefore bars Plaintiffs contract claim. Pennhurst, 465 U.S. at 104-06, 104 S.Ct. at 910-11. We dismiss Plaintiffs' contract claim, Mascheroni, 28 F.3d at 1560, and remand with instructions for the district court to vacate its judgment as to Plaintiffs' contract claim and dismiss for lack of jurisdiction.[23] Id.
 
 VII.
 
 61
 In sum, we DISMISS the portions of Plaintiffs' SSA claim seeking retroactive monetary reimbursement of withheld assistance benefits and declaratory relief. We DISMISS Plaintiffs' UARA and contract claims in their entirety. We DISMISS the portion of Plaintiffs' suit seeking notice relief. We REMAND for the district court to vacate its judgment as to the aforementioned claims and portions of Plaintiffs' suit and dismiss for lack of jurisdiction. In all other respects, we AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 For a general discussion of the SSI program's lack of an emergency assistance procedure and state interim assistance programs, see 120 Cong.Rec. 20967-68 (1974) (statement of Senators Long and Taft)
 
 
 [2]
 A person is "unemployable" if he has a physical or mental impairment that is so severe that he cannot do his previous work or "reasonably hope" to find other "substantial work" ($500 or more a month) given his age, education, and work experience. Utah Admin.Code Sec. R810-218-810(3)(a) (1991 version)
 
 
 [3]
 A person is "marginally employable" if he is employable but unable to compete in the regular labor market. Utah Admin.Code Sec. R810-218-810(4)
 
 
 [4]
 Participation in a WEAT project is determined on a case-by-case basis by the case worker assigned to the particular applicant. Some GA applicants may be exempted or excused from participating in a WEAT project for various reasons, such as if the applicant and case worker agree that it is not practical or appropriate, or if no WEAT project is available, or if the applicant is ill or incapacitated and will be unable to work on a project for more than 30 consecutive days. See Utah Admin.Code Sec. 810-212-212(7)(a), (b)
 
 
 [5]
 Under 42 U.S.C. Sec. 407(a):
 The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process.
 See also 42 U.S.C. Sec. 1383(d)(1) (Sec. 407 applies to SSI benefits).
 
 
 [6]
 "Interim assistance" is "assistance financed from State or local funds and furnished for meeting basic needs." 42 U.S.C. Sec. 1383(g)(3)
 
 
 [7]
 Aside from Sec. 1383(g)(1)'s requirement that an individual supply written authorization, Sec. 1383(g)(4) requires the state to enter into a formal reimbursement agreement with the Secretary in order to be able to obtain interim assistance reimbursement. See also Rivers v. Schweiker, 692 F.2d 871, 872 (2d Cir.1982) (state must obtain individual's written authorization and enter into formal reimbursement agreement with Secretary in order to obtain reimbursement for interim assistance provided), cert. denied, 460 U.S. 1088, 103 S.Ct. 1783, 76 L.Ed.2d 353 (1983). The parties do not dispute that Utah has entered into a formal reimbursement agreement with the Secretary
 
 
 [8]
 Davies suffers from depression, alcohol dependence, adjustment disorder, dependent personality, hiatal hernia, gastrointestinal problems, and arthritis. Aplt.App. at 11, 27
 
 
 [9]
 In Utah, the ORS coordinates interim assistance withholding from individuals' retroactive SSI benefits. When the Social Security Administration sends the ORS an SSI benefits check on behalf of an individual, the ORS determines the amount of assistance Utah has provided, withholds that amount from the individual's SSI benefits and remits him the remaining amount. Aplt.App. at 118-19
 
 
 [10]
 Individuals may participate only six months out of a year in EWP. Utah Admin.Code Sec. R810-216-601(4)
 
 
 [11]
 Plaintiffs also alleged Defendants violated their Fifth and Fourteenth Amendment due process and equal protection rights, but later abandoned these claims
 
 
 [12]
 Specifically, the parties agreed to the court's certification of class of all persons who, since June 1, 1991: (1) have been, are now, or will be applicants for, or recipients of SSI; and, (2) have had or will have some portion of their retroactive SSI award withheld by Defendants as reimbursement for benefits and/or monthly expense allowances received by such persons while participating in EWP or GA-WEAT. Aplt.App. at 34-35
 
 
 [13]
 Specifically, Defendants agreed: (1) to settle Plaintiff Johns' claims by mailing him a check for $759.94; (2) to partially settle Plaintiff Davies' claim by returning to him the amount of WEAT work allowances withheld from his SSI benefits; (3) to discontinue their policy of recovering EWP benefits and WEAT work allowances from EWP and GA-WEAT participants' SSI benefits; (4) to refund to class members EWP benefits and WEAT work allowances withheld from their SSI benefits; (5) to prospectively prohibit individuals who have or will apply for SSI benefits from participating in EWP; and (6) to prospectively prohibit individuals qualifying for GA from participating in WEAT if they have applied or will apply for SSI, unless they sign a statement volunteering to participate in WEAT. Aplt.App. at 35-36
 
 
 [14]
 Plaintiffs added the contract claim at summary judgment
 
 
 [15]
 Notice relief, in general, is simply notice to the members of a class of the outcome of the litigation. Green, 474 U.S. at 70 n. 1, 106 S.Ct. at 426 n. 1
 
 
 [16]
 If Utah had wanted to waive its Eleventh Amendment immunity with respect to claims for withheld SSI benefits, it clearly knew how to do so, as it has done in the Ute Indian Water Compact, Utah Code Ann. Sec. 73-21-2, Article IV ("For purposes of compelling compliance with the terms of this Compact, each party [--i.e., the Ute Indian Tribe, State of Utah, and United States Government] waives the defense of sovereign immunity as to actions brought by any other party, including any defense under the Eleventh Amendment to the United States Constitution.")
 
 
 [17]
 For example, Utah has generally waived its immunity to suit as to contractual obligations, Utah Code Ann. Sec. 63-30-5, certain property actions, Utah Code Ann. Sec. 63-30-6, and under certain circumstances actions for injuries caused by the negligence of an employee acting within the scope of his employment, Utah Code Ann. Sec. 63-30-10
 
 
 [18]
 In any event, we do not believe the Secretary's use of the term "give" interchangeably with "furnish" in any way limits the scope of the term "furnish." "Give" is merely the simplest synonym for "furnish." Webster's Ninth New Collegiate Dictionary 498 (1984)
 
 
 [19]
 We note that the FLSA provides that:
 The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, or an interstate governmental agency, if--
 (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
 (ii) such services are not the same type of services which the individual is employed to perform for such public agency.
 29 U.S.C. Sec. 203(e)(4)(A) (emphasis added). Plaintiffs are not employed by DHS to perform any services; therefore, this provision is inapplicable to exclude Plaintiffs from the definition of "employee."
 
 
 [20]
 We recognize that in Klaips, we were not presented with the question whether GA-WEAT and EWP participants were employees of Utah for purposes of the FLSA. Instead, we held GA-WEAT participants were not employees of Utah for purposes of obtaining an income deduction under the Food Stamp Act of 1964, 7 U.S.C. Secs. 2011-2032. Nonetheless, Klaips reasoning is relevant to our application of the economic reality test in the instant case
 
 
 [21]
 Plaintiffs ask us to apply the four-factor test set forth in Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir.1983) to determine whether they are DHS's employees for purposes of the FLSA. We have not adopted the Bonnette test in this circuit. Instead, we have adopted a five-factor test in Doty, 733 F.2d at 722-23, which applies when the issue is whether an individual is an employee or independent contractor, and a six-factor test which applies when the issue is whether an individual is an employee or trainee. Reich, 992 F.2d at 1026-29
 These tests are helpful analytical guides, but not rigid criteria which must be mechanically applied to each case. Bonnette, 704 F.2d at 1470; Reich, 992 F.2d at 1027; Dole, 875 F.2d at 805. In the instant case, none of the tests fits the circumstances we are confronted with. We therefore simply follow the analysis of Marshall and Klaips, which comport with the Supreme Court's direction to focus upon the circumstances of the whole activity and the economic reality of the relationship. Rutherford, 331 U.S. at 730, 67 S.Ct. at 1477; Goldberg, 366 U.S. at 33, 81 S.Ct. at 936.
 
 
 [22]
 We are doubtful that federal common law would govern the question whether an interim assistance authorization entered into between an individual and a state is void if it fails to define essential terms. In this instance, there is no "unique[ ] federal interest" in the outcome of the suit. Boyle v. United Technologies Corp., 487 U.S. 500, 504, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988). Even if an interim assistance authorization entered into by a person and a state was declared void, it would not impact in any way the federal government's obligation to grant an eligible person SSI benefits. Because the determination that an interim assistance authorization was void would "have no direct effect upon the United States or its Treasury," Miree v. DeKalb County, 433 U.S. 25, 29, 97 S.Ct. 2490, 2493, 53 L.Ed.2d 557 (1977), state, not federal common law, would govern. Id. at 28-33, 97 S.Ct. at 2493-2495
 
 
 [23]
 Because we do not grant Plaintiffs injunctive relief under any of their claims, the Eleventh Amendment bars the portion of Plaintiffs' suit seeking notice relief. Green, 474 U.S. at 70-74, 106 S.Ct. at 426-29