*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PAUL MENDEL,

        *Plaintiff-Appellant*,

    *v.*

CITY OF GIBRALTAR,

        *Defendant-Appellee.*

No. 12-1231

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-10496—Victoria A. Roberts, District Judge.

Argued: May 21, 2013

Decided and Filed: August 15, 2013

Before: BATCHELDER, Chief Judge; MERRITT and KETHLEDGE, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** L. Rodger Webb, L. RODGER WEBB, P.C., Southfield, Michigan, for
Appellant. Cassandra L. Booms, LOGAN, HUCHLA & WYCOFF, P.C., Riverview,
Michigan, for Appellee. Rachel Goldberg, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C., for Amicus Curiae. **ON BRIEF:** L. Rodger Webb, L.
RODGER WEBB, P.C., Southfield, Michigan, for Appellant. Cassandra L. Booms,
LOGAN, HUCHLA & WYCOFF, P.C., Riverview, Michigan, for Appellee. Rachel
Goldberg, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for
Amicus Curiae.

    BATCHELDER, C.J., delivered the opinion of the court, in which MERRITT,
J., joined. KETHLEDGE, J. (pp. 11–12), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

ALICE M. BATCHELDER, Chief Judge.   This case presents the question of whether purportedly volunteer firefighters who receive a substantial hourly wage for responding to calls whenever they choose to do so are "employees" or "volunteers" for purposes of the Fair Labor Standards Act ("FLSA") and Family Medical Leave Act ("FMLA").   Plaintiff-Appellant Paul Mendel was employed by Defendant-Appellee City of Gibraltar ("the City") as a dispatcher in the City's police department.   After Mendel's employment was terminated, he sued the City for allegedly violating his rights under the FMLA.   The City moved for summary judgment, arguing that it did not employ the requisite number of employees for application of the FMLA because its volunteer firefighters were not employees for purposes of the FMLA.   The district court agreed with the City and granted its motion for summary judgment.   Because we conclude that the Gibraltar firefighters are in fact "employees" within the meaning of the FLSA and FMLA, we REVERSE the judgment of the district court and remand for further proceedings.

## I.

The facts relevant to this appeal do not concern Mendel or the story surrounding his termination.   Rather, the facts pertinent to the issue before us concern the City's "volunteer" firefighters and the nature of their responsibilities and of their relationship to the City.[1]

———————————

[1]In the course of this appeal, we previously remanded the case to the district court to determine whether the firefighters should be joined as a party to these proceedings pursuant to Fed. R. Civ. P. 19(a)(1)(B)(i).   On remand, the President of the Gibraltar Volunteer Firemen's Association filed an affidavit with the district court, stating that the Association had met and voted to refrain from being included in the present lawsuit.   Thereafter, the parties jointly stipulated that this Court could accord complete relief among the existing parties, and that the Association did not claim an interest in this action that might leave it subject to a substantial risk of incurring inconsistent obligations.   Accordingly, the district court entered an order stating that an evidentiary hearing was unnecessary.   In light of these circumstances, we now proceed to address the merits of the issue raised in this appeal with the parties presently before us.

At the time Mendel was terminated from his position as a police dispatcher, the City employed forty-one employees excluding its "volunteer" firefighters. According to the City Fire Chief's estimate, the City typically had between twenty-five and thirty volunteer firefighters. The volunteer firefighters of Gibraltar must complete training on their own time without compensation.[2] While they are not required to respond to any emergency call, they are paid $15 per hour for the time they do spend responding to a call or maintaining equipment. They do not work set shifts or staff a fire station; they maintain other employment and have no consistent schedule working as volunteer firefighters.

The firefighters generally receive a Form–1099 MISC from the City. They do not receive health insurance, sick or vacation time, social security benefits, or premium pay. The City does have an employment application for the firefighters, and it apparently keeps a personnel file for each firefighter. A volunteer firefighter may be promoted or discharged.

Mendel introduced evidence below of what several other local communities pay their full-time firefighters. According to his wife's affidavit, she and Mendel discovered that certain other communities in the area pay hourly wages ranging from approximately $14 to $17 per hour. Also, the City pays its own part-time Fire Chief $20,000 per year, and the Chief testified in his deposition that he "tr[ies] to work 20 hours per week at the [Gibraltar] fire station." Based on this information, the Secretary of Labor notes in her amicus brief[3] that if one assumes the Fire Chief works fifty-two weeks per year, he effectively earns $19.23 per hour.

The City moved for summary judgment below, arguing that Mendel was not an "eligible employee" under the FMLA. The City contended that the volunteer firefighters were not employees of the City, and that therefore the City did not employ fifty or more employees, as required under the FMLA's definition of "eligible employee." *See* 29

---

[2] Apparently, the City reimburses the firefighters' "tuition costs" for training and testing, but does not pay wages for the time the firefighters spend training and testing.

[3] The Secretary of Labor filed an amicus brief in support of Mendel on appeal.

U.S.C. § 2611(2)(B)(ii).  The district court agreed and granted summary judgment for the City.  Mendel now appeals.

## II.

"We review a district court's grant of summary judgment *de novo*."  *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013).  A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether this standard is met, "[w]e view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  There appears to be no significant factual dispute relevant to the issue before us.  The question of whether an individual is an "employee" within the meaning of the FLSA is a question of law.  *See Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994).

A plaintiff bringing an interference claim under the FMLA[4] has the burden to prove that:

> (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Walton*, 424 F.3d at 485.  The only element at issue in this appeal is the first—whether Mendel was an "eligible employee" within the meaning of the FMLA.[5]

---

[4]There are "[t]wo distinct theories for recovery on FMLA claims."  *Arban v. West Pub. Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).  First, there is an "entitlement" or "interference" theory based on a violation of 29 U.S.C. § 2615(a)(1) or § 2614(a)(1).  *Id.* at 400–01.  Second, there is a "retaliation" or "discrimination" theory based on a violation of § 2615(a)(2).  *Id.* at 401.  Mendel has brought a claim under the entitlement/interference theory.

[5]The City acknowledges that it is an employer as defined by the FMLA, since all public agencies are considered employers under that Act.  *See* 29 U.S.C. § 2611(4); 29 C.F.R. § 825.108.

The FMLA defines the term "eligible employee" in 29 U.S.C. § 2611(2). This case centers on one specific exclusion in that section: "The term 'eligible employee' does not include . . . any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." § 2611(2)(B). In this case, if the "volunteer" firefighters are "employees" of the City, then the City employs fifty or more employees, and Mendel is an "eligible employee" under the FMLA. However, if the firefighters are not "employees" of the City within the meaning of the FMLA, then the City employs less than fifty employees, and Mendel is not an eligible employee under the FMLA.

To answer the question of whether reputedly "volunteer" firefighters fall within the scope of the FMLA's definition of an "employee," we must turn to the section of the FLSA that addresses this issue. *See* 29 U.S.C. § 2611(3) (providing that for purposes of the FMLA, the terms "employ" and "employee" have the same meaning as given in 29 U.S.C. § 203(e) and (g), the definitions section of the FLSA). The FLSA generally defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In a slightly more illuminating vein, it defines "employ" as "to suffer or permit to work." § 203(g). Noting the "striking breadth" of the FLSA's expansive definition of "employ," the Supreme Court has stated that this definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (distinguishing the scope of "employee" under ERISA as not being as broad as it is under the FLSA); *see also Walling v. Portland Terminal Co.*, 330 U.S. 148, 150–51 (1947) ("[I]n determining who are 'employees' under the [FLSA], common law employee categories or employer-employee classifications under other statutes are not of controlling significance. This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." (citation omitted)). The high Court "has consistently construed the Act liberally to apply to the furthest reaches consistent with congressional

direction." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (internal quotation marks omitted).

The Supreme Court has adopted an "economic reality" test to determine whether an individual is an employee under the FLSA. *See, e.g.*, *id.* at 301. Under the Court's long-standing FLSA jurisprudence, "the determination of the relationship does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). "The issue of the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity." *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984).

Here, it appears that the Gibraltar firefighters fall within the FLSA's broad definition of employee. The firefighters are suffered or permitted to work, *see* 29 U.S.C. § 203(g), and they even receive substantial wages for their work.[6]

This is not the end of our analysis, however. In 1986, Congress amended the FLSA to clarify that individuals who volunteer to perform services for a public agency are not employees under the Act. Section 203(e) now includes the following provision:

> The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if—
>
> (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
>
> (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

---

[6] In concluding that the firefighters were not "employees" within the meaning of the FLSA, the district court emphasized the lack of control exercised by the City over the firefighters. While we recognize the importance of control as one of the factors under the general economic reality test, we cannot agree that the lack of control in this case is sufficient to overcome the fact that the firefighters are paid substantial wages for performing work as permitted by the City. Indeed, we are mindful of the Supreme Court's observation that the FLSA's broad definition of "employ" "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co.*, 503 U.S. at 326. The fact that the firefighters are not only "suffer[ed] or permit[ted] to work," *see* 29 U.S.C. § 203(g), but are also paid substantial wages for their work, means that they certainly fall within the broad scope of the FLSA's general definition of employees.

29 U.S.C. § 203(e)(4)(A).

Thus, the question becomes whether the Gibraltar firefighters fall within this exception to the FLSA's generally broad definition of "employee." Specifically, the question before us is whether the wages paid to the firefighters constitute "compensation" or merely a "nominal fee." If the hourly wages are compensation, then the firefighters are employees under the FLSA. Conversely, if the wages are merely a nominal fee, then the firefighters are volunteers expressly excluded from the FLSA's definition of employee.

The official regulations provide guidance at this juncture. The regulations define "volunteer" as "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R. § 553.101(a); *see also* 29 C.F.R. § 553.104(a) (employing similar language). The regulations proceed to recognize, "Volunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers." 29 C.F.R. § 553.106(a). The specific provision addressing nominal fees provides, in part, "A nominal fee is not a substitute for compensation and must not be tied to productivity. However, this does not preclude the payment of a nominal amount on a 'per call' or similar basis to volunteer firefighters." 29 C.F.R. § 553.106(e). Finally, the regulations caution, "Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation." 29 C.F.R. § 553.106(f).

In the context of the economic realities of this particular situation, we hold that the hourly wages paid to the Gibraltar firefighters are not nominal fees, but are compensation under the FLSA. The firefighters do not receive "a nominal amount on a 'per call' or similar basis." 29 C.F.R. § 553.106(e). Rather, they render services with the promise, expectation, and receipt of substantial compensation. *See* 29 C.F.R. §§ 553.101(a), 553.104(a). Each time a firefighter responds to a call, he knows he will

receive compensation at a particular hourly rate—which happens to be substantially similar to the hourly rates paid to full-time employed firefighters in some of the neighboring areas. Essentially, the Gibraltar firefighters are paid a regular wage for whatever time they choose to spend responding to calls. These substantial hourly wages simply do not qualify as nominal fees. *Cf. Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 433–34 (4th Cir. 2011) (holding that a School Board's payment of a fixed stipend to a golf coach was a nominal fee where: (1) the stipend amount did not change based on either how much time and effort the coach expended on coaching activities or how successful the team was; and (2) the approximate hourly rate to which the coach's stipend could be converted was only a fraction (less than ¼) of the hourly wage he received as a full-time security assistant employed by the School Board).

Notably, the Supreme Court has held that those who "work in contemplation of compensation" are "employees" within the meaning of the FLSA, even though they may view themselves as "volunteers." *Tony & Susan Alamo Found.*, 471 U.S. at 300–02, 306. Despite the fact that the Gibraltar firefighters are referred to as "volunteers," the inescapable fact nevertheless remains that they "work in contemplation of compensation." Thus, the Gibraltar firefighters are "employees" and not "volunteers" within the meaning of the FLSA. *See Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 277 (D.N.J. 1997) ("In view of the fact that the plaintiffs [firefighters] both expected and received hourly compensation, in an amount greater than a 'nominal' fee, it is clear that plaintiffs were not volunteers . . . .").

One final issue requires comment. The parties dispute the applicability of 29 U.S.C. § 203(y) to this case. The district court found § 203(y) relevant and used it in its analysis. However, § 203(y) does not support the City's position. That subsection reads:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who—
> (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and

(2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y).  The phrase "employee in fire protection activities" appears in § 207(k), which prescribes a special rule for calculating when overtime pay is required for employees in fire protection activities or employees in law enforcement activities.[7]

We fail to see how § 203(y) can fairly be interpreted to require anyone performing firefighting services to fit within its definition in order to fall within the scope of the FLSA in general.  Rather, Congress has simply explained that for those employed firefighters who have "the legal authority and responsibility" to put out fires, a different standard applies for calculating their entitlement to overtime pay, due to the nature of their work.  This makes perfect sense.  However, it is a *non sequitur* to claim that any type of firefighter who fails to fit the definition of an "employee in fire protection activities" in § 203(y) cannot be considered an "employee" under the broad understanding of that term for any other purpose under the FLSA.  This would mean that unless a firefighter has a legal duty to respond to emergency calls, he could never be considered an "employee" under the FLSA in general, even if he were paid wages equal to—or even greater than—what a career firefighter would be paid.  This is not a fair reading of the statutory scheme of the FLSA.

The role of § 203(y) is to define a particular class of firefighters who are treated somewhat differently from ordinary employees for purposes of § 207.  The statute for determining whether firefighters qualify as employees or volunteers under the FLSA in general is § 203(e)(4).  If § 203(y) sets the standard for whether firefighters are to be considered employees under the FLSA as a whole, this renders § 203(e)(4) inapplicable and irrelevant to firefighters.  However, this is not what the regulations contemplate. *See* 29 C.F.R. §§ 553.104(b), 553.106(e).  Section 203(y) simply does not apply to this case.

---

[7]The term also appears in § 213(b)(20), which provides that § 207 does not apply to "any employee of a public agency who in any workweek is employed in fire protection activities . . . if the public agency employs during the workweek less than 5 employees in fire protection . . . activities."

## III.

The fact that the FLSA's categories of "employee" and "volunteer" do not necessarily match the common use of those terms or popular perception in general has required us to reach a result in this case that is admittedly somewhat counter-intuitive. However, under the relevant authority and the facts of this case, we are constrained to hold that, simply put, the substantial wages paid to these firefighters constitute compensation, not nominal fees, which makes the Gibraltar firefighters employees, not volunteers, for purposes of the FLSA and FMLA.[8]  Accordingly, we **REVERSE** the district court's grant of summary judgment for the City and **remand** for further proceedings.

---

[8]We deem it unnecessary on the facts of this case to address the validity of the Department of Labor's proposed "twenty-percent test" for determining whether a given payment constitutes compensation or a nominal fee.

---

**DISSENT**

---

KETHLEDGE, Circuit Judge, dissenting.  The outcome of this case turns upon whether the City of Gibraltar's firefighters are "employees" under the Family and Medical Leave Act.  The Act defines the term "employee" by incorporating the definition found in § 203(e) of the Fair Labor Standards Act.  29 U.S.C. § 2611(3).  That section unhelpfully defines "employee" to mean "any individual employed by an employer."  *Id.* § 203(e)(1).  Section 203(e) further provides that "employee" does not include "any individual who volunteers to perform services for a public agency[.]"  *Id.* § 203(e)(4)(A).

Volunteer status precludes employee status under the Leave Act; but that someone is *not* a volunteer does not necessarily mean they *are* an employee.  Some types of workers fall into neither category, such as independent contractors, prisoners, and residential assistants in college dorms.  *See Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. 1984); *Harker v. State Use Indus.*, 990 F.2d 131 (4th Cir. 1993); *Marshall v. Regis Educ. Corp.*, 666 F.2d 1324 (10th Cir. 1981).  Thus we must ask two questions here:  first, whether the firefighters are volunteers under § 203(e)(4)(A); and second, if not, whether they meet the definition of employees under § 203(e)(1).

To qualify as a volunteer, the firefighters cannot receive "compensation," but they can receive a "nominal fee."  29 U.S.C. § 203(e)(4)(A).  In deciding whether a fee is nominal, the Department of Labor's regulations require that we "examin[e] the total amount of payments made . . . in the context of the economic realities of the particular situation."  29 C.F.R. § 553.106(f).  Here, the firefighters receive a fee of $15 for each hour that they actually respond to fires.  Whether that fee is nominal is a close call, but for two reasons I think it is.

In determining whether a fee is nominal, we must consider the value of the service at issue.  Fifteen dollars per hour might not be a nominal fee for a fast-food worker, but for a surgeon who provides her services to some charitable organization, it

surely would be.  Here, the firefighters provide a service of significant value—indeed, they routinely risk their own lives while protecting the lives and property of others.

Second, as a practical matter, the firefighters receive considerably less than $15 per hour for their time in that role.  The firefighters must complete 152 hours of training, pass an examination, and then complete an additional 73 hours of training each year.  The City does not pay the firefighters for any of this time.  Thus, even when just the annual training is taken into account, the average firefighter receives approximately $8.67 per hour, which is little more than minimum wage.  Amortize in the front-end training, and a McDonald's employee receives more than these public servants do.  I would therefore hold that the firefighters are what the City says they are:  volunteers.

But in any event the firefighters are not employees.  As noted above, the statute defines "employee" as "any individual employed by an employer."   29 U.S.C. § 203(e)(1).  The statute also defines the term "employ" to mean "to suffer or permit to work[.]"  *Id.* § 203(g).  Putting these definitions together, an employee is an individual whom an employer "suffer[s] or permit[s] to work."

The firefighters do not satisfy this definition.  Shortly after Congress passed the Fair Labor Standards Act, the Supreme Court interpreted the term "work"—as used in § 203(g)—to mean "physical or mental exertion" that is "*controlled or required by the employer*[.]"  *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (emphasis added).  Here, the City neither controls nor requires the firefighters' efforts.  The first firefighter to respond to a fire typically controls the scene; the City does not send anyone to supervise them.  And the City does not require a firefighter to respond to any fires in the first place.  Indeed a firefighter could go for years without responding to a single fire—and the City would not discipline him.

Persons that need a Family and Medical Leave Act are presumably persons who need leave not to show up for work.  That description does not apply to the City of Gibraltar's firefighters.  I respectfully dissent.