Matter of Andersen v Hein
2026 NY Slip Op 03259
May 26, 2026
Court of Appeals
Cannataro, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Danny Andersen, et al., & c., Appellants,
v
Michael P. Hein, & c., Respondent, et al., Respondents.

Decided on May 26, 2026
No. 42

Saima Akhtar, for appellants.
Kate H. Nepveu, for respondent Michael P. Hein.
The Legal Aid Society et al., amici curiae.

Cannataro, J.

[*1]
When an individual applies for federal Supplemental Security Income benefits, it can take months or even years before their eligibility is determined. To ensure that a claimant's basic needs are provided for during that waiting period, Congress created an incentive for states to fill the gap through the provision of interim public assistance. Specifically, 42 USC § 1383 (g) authorizes states to obtain reimbursement for such interim assistance from the retroactive federal benefits eventually awarded.
In this case, petitioners received interim assistance from New York that was conditioned on their participation in work activities and corresponded to the minimum wage for that labor. The question presented is whether the State's practice of obtaining reimbursement from the federal government for the cost of such interim assistance pursuant to 42 USC § 1383 (g) violates another federal statute—the Fair Labor Standards Act—by effectively depriving workers of the value of their labor.
We answer that question in the negative. The funds in dispute were included in petitioners' retroactive federal benefits award with the understanding that they would ultimately be paid to the State as compensation for its interim assistance. Because petitioners received both the minimum wage for their work and all other amounts they are [*2]entitled to under federal law to satisfy their basic needs, reimbursement did not result in any cognizable loss to petitioners.
I.
Before delving into the relevant facts and arguments, some background is necessary on the Fair Labor Standards Act (FLSA) (29 USC § 201 et seq.) and the two public assistance programs at issue here: the federal Supplemental Security Income (SSI) program (42 USC § 1381 et seq.) and New York's Safety Net Assistance (SNA) program (Social Services Law § 157 et seq.).
The SSI Program
Created by Congress in 1972, SSI is a social welfare program funded from general tax revenue that "establishes a federally guaranteed minimum income for the aged, blind, and disabled" sufficient to "meet their basic needs" (Schweiker v Hogan, 457 US 569, 571, 581-582 [1982]; Splude v Apfel, 165 F3d 85, 87 [1st Cir 1999]; Noland v Shalala, 12 F3d 258, 259 [DC Cir 1994]; White v Bowen, 835 F2d 974, 975-976 [2d Cir 1987]; Jackson v Schweiker, 683 F2d 1076, 1082 [7th Cir 1982]).
Because "SSI benefits are paid solely on the basis of economic need" (White, 835 F2d at 975), a claimant's income "is a major factor" in their entitlement to the benefit (20 CFR 416.1100). Eligibility for SSI depends, among other things, upon a claimant's income "falling below a minimum subsistence level" (Pappas v Bowen, 863 F2d 227, 229 [2d Cir 1988]; see 42 USC § 1382 [a]). Once a claimant is determined to be eligible for SSI, their benefit is calculated as a statutorily specified amount, "reduced by the amount of [nonexcludable] income" of such individual (42 USC § 1382 [b] [1]). "Income" includes "both earned income and unearned income" (id. § 1382a [a]) and has been broadly defined by regulation as "anything that you receive in cash or in-kind that you can use to meet your needs for food or shelter" (20 CFR 416.1102). By restricting SSI in this way, Congress evinced the intent that claimants receive only what is necessary to "bring [their purchasing power] up to the minimum poverty level" during a given period (see Jackson, 683 F2d at 1082).
When the federal government approves an application for SSI, it awards not only a prospective monthly benefit, but typically also a lump-sum benefit representing retroactive payment of the claimant's basic needs during the period between the date of their application and the date their SSI eligibility was determined (see Biggs v Lyng, 823 F2d 15, 17 [2d Cir 1987]). Because SSI claimants sometimes experience delays of several months or even years before their entitlement to benefits is determined, Congress in 1974 created a mechanism to incentivize states to furnish "interim assistance" to claimants while their SSI applications are pending (see Matter of Rodriguez v Perales, 86 NY2d 361, 363 [1995]; Rivers v Schweiker, 692 F2d 871, 872 [2d Cir 1982]).
First, the governing statute excludes "assistance, furnished to or on behalf of [an SSI claimant] . . . which is based on need and furnished by any State or political subdivision of a State" from the definition of "income" used to determine a claimant's eligibility for SSI and the amount of their award (42 USC § 1382a [b] [6]). State-funded public assistance therefore does not disqualify a claimant from receiving SSI or reduce the value of their SSI award at the outset; however, 42 USC § 1383 (g) authorizes the Social Security Administration to withhold from a claimant's initial retroactive lump-sum SSI award "an amount sufficient to reimburse the State (or political subdivision) for interim assistance furnished on behalf of the individual by the State (or political subdivision)"FN1 (see id. § 1383 [g] [1]). The statute defines "interim assistance" as "assistance financed from State or local funds and furnished for meeting basic needs" (id. § 1383 [g] [3]; see also 20 CFR 416.1901-416.1922). In effect, then, the claimant's retroactive SSI award is used to compensate a state (or locality) for temporarily fulfilling the federal government's responsibility to provide for a claimant's basic needs during the period in which their SSI application was under review. Through this reimbursement process, Congress "carrie[d] out the need and intent to reimburse local welfare agencies that provide interim assistance" while also "prevent[ing] windfalls to claimants" whose basic needs were covered by states while their SSI applications were pending (see McKenzie v Bowen, 787 F2d 1216, 1223 [8th Cir 1986]).
The SNA Program
SNA is a public assistance program funded and administered by New York State and local social services districts that provides cash and other assistance to "financially needy" individuals in New York (see Social Services Law §§ 2 [19], 157 [1], 158 [1], 159 [1] [a]). The purpose of the program is "to provide adequately for those unable to maintain themselves" and "restore such persons to a condition of self-support or self-care . . . as may prevent the necessity of their becoming public charges" (id. § 131 [1]). SNA is therefore designed to cover a recipient's minimum basic needs such as clothing, shelter, and transportation (see id. §§ 157 [1], 159). Cash assistance is generally available for only two years over a recipient's lifetime, although other forms of assistance may continue to be provided thereafter (see id. § 159 [2]).
To help ensure that the SNA program does not operate as a subsidy for other benefits programs, and that an SNA recipient does not receive multiple forms of public assistance intended to cover the same underlying basic needs, the governing statute requires an applicant for SNA who reasonably appears to be eligible for SSI to apply for the federal program, and provides that "[a] person who is receiving federal [SSI] payments and/or additional state payments shall not be eligible for [SNA]" (Social Services Law § 158 [2]). An SNA applicant nonetheless remains "eligible for [SNA] until he or she has received a federal [SSI] payment" (id.). Thus, SNA is available as "interim assistance" to cover an eligible individual's minimum basic needs during the period in which their SSI application is pending (see 18 NYCRR 353.2 [a] [2] [i]). "New York, like other states, provides such interim assistance on the expectation that it will be reimbursed by the [federal government] from the recipient's retroactive SSI award" (White, 835 F2d at 976). SNA recipients are in fact required to sign a written authorization allowing the federal government to reimburse the State for such interim assistance in accordance with federal law (Social Services Law § 158 [2]).
Notably, unless excused based on illness, incapacity, age, or caregiver responsibilities, SNA recipients must also engage in work activities as a condition of receiving public assistance (see id. §§ 331, 332). When unsubsidized private employment is not available, recipients may be required to participate in a work experience program with a public or not-for-profit agency FN2 (see id. §§ 336 [1] [d], 336-c [1] [a]-[b]). Such programs are designed to provide participants the opportunity to improve their employability by acquiring the skills, training, and work habits needed to obtain and retain employment and end their reliance on government benefits (see id. § 331 [1] [declaring that it is "the policy of the state" that "individuals receiving public assistance will be furnished work activities and employment opportunities, and necessary services in order to secure unsubsidized employment that will assist participants to achieve economic independence"]).
The FLSA
The FLSA was enacted by Congress in 1938 "to protect all covered workers from substandard wages and oppressive working hours" (Barrentine v Arkansas-Best Freight System, Inc., 450 US 728, 739 [1981]) and to "secure for the lowest paid segment of the Nation's workers a subsistence wage" (D. A. Schulte, Inc. v Gangi, 328 US 108, 116 [1946]). The statute provides, in relevant part: "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at [a specified] rate" (29 USC § 206 [a]).
Under governing FLSA regulations, wages "cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear' " (29 CFR 531.35). Thus, "[t]he wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee" (id.).
This Court has held that SNA recipients assigned to participate in work experience programs may be akin to employees for purposes of the FLSA and therefore subject to federal minimum wage requirements (see Matter of Carver v State of New York, 26 NY3d 272, 275-276 [2015]). Consistent with that holding, the maximum number of hours that an SNA recipient may be required to work is calculated by taking the total assistance payable to that [*3]recipient under New York law and dividing it by the higher of the federal or state minimum wage (Social Services Law § 336-c [2] [b]).
II.
Petitioners in this case are SSI recipients. While their applications for SSI were pending, petitioners received interim assistance from New York in the form of SNA, conditioned on their participation in work experience programs FN3 (WEPs). The number of hours they were required to work was calculated by dividing their SNA benefit by the minimum wage. When the Social Security Administration approved petitioners' SSI applications, it sent retroactive lump-sum checks to the county districts responsible for administering petitioners' SNA benefits. Those districts used the funds to reimburse New York for the SNA previously paid to petitioners and transferred them the excess funds.FN4
Following an unsuccessful administrative challenge, petitioners joined this hybrid CPLR article 78 proceeding and putative class action FN5. As relevant here, petitioners claimed that New York's policy of recouping the full value of the SNA it pays to WEP participants from their retroactive SSI awards constitutes a kick-back of the minimum wage for their labor in violation of the FLSA and this Court's decision in Carver (26 NY3d 272, supra). Respondent countered that federal law expressly entitles the State to reimbursement for interim assistance, and that allowing petitioners to retain both their SNA benefits and the full value of their retroactive SSI awards would result in a "windfall" to petitioners.
After procedural history not relevant here, Supreme Court granted judgment to petitioners on their FLSA claim, declaring that the interim assistance reimbursement process "is subject to the [FLSA] . . . and must reflect the value of any participation by a public assistance recipient in a WEP activity during the [reimbursement] period." Respondent appealed and the Appellate Division unanimously reversed (230 AD3d 880 [3d Dept 2024]). The Appellate Division explained that petitioners were not deprived of the minimum wage for their WEP labor because they were paid that value in interim assistance "and retain[ed] that money" (id. at 882). The only effect of the reimbursement on petitioners was to reduce their retroactive SSI payments, which "prevent[ed] [them] from 'double dipping' and receiving both interim assistance benefits and SSI benefits" over the same period (id.). This Court granted petitioners leave to appeal (43 NY3d 904 [2025]), and we now affirm.
III.
Petitioners read this Court's decision in Matter of Carver v State of New York (26 NY3d 272 [2015]) as holding that New York cannot lawfully recoup the assistance paid to a WEP participant from a separate payment stream like a retroactive SSI award, as doing so would effectively deprive the WEP participant of the minimum wage value of their labor. Petitioners misapprehend the scope of our holding in Carver, as well as the nature and purpose of retroactive SSI awards.
Carver involved a former SNA recipient whose benefits were conditioned on his participation in a WEP run by a city agency (id. at 276). Seven years after his SNA ended, Carver won $10,000 in the State lottery. Invoking Social Services Law § 131-r (1), the State appropriated a portion of the lottery prize to reimburse itself for the SNA previously paid to Carver. Carver challenged that reimbursement in a CPLR article 78 proceeding, alleging that the [*4]interception of his lottery winnings violated the FLSA by retroactively depriving him of the minimum wage for his WEP labor (id. at 276-277).
Supreme Court dismissed Carver's FLSA claim for failure to state a cause of action (see CPLR 3211 [a] [7]). Relying on this Court's decision in Brukhman v Giuliani (94 NY2d 387 [2000]), the court reasoned that Carver's WEP participation did not make him an "employee" within the meaning of the FLSA, and therefore the State was not required to pay him the minimum wage for his labor in the first place (Matter of Carver v State of New York, 24 Misc 3d 602, 608 [Sup Ct, Kings County 2009])FN6. The Appellate Division reinstated the claim, holding that Carver "was an employee within the meaning of the FLSA," and remitted the matter to Supreme Court for further proceedings (Matter of Carver v State of New York, 87 AD3d 25, 33-35 [2d Dept 2011]). On remand, Supreme Court granted Carver's petition, and the parties "entered into a stipulation and order of contingent settlement which resolved all outstanding issues, including attorneys fees" (Carver, 26 NY3d at 278). This Court then granted the respondents leave to appeal from the stipulation and order of contingent settlement, bring up for review the prior, nonfinal Appellate Division order (id.).
On appeal to this Court, the only argument advanced by the respondents was that the FLSA did not apply to Carver at all because WEP participants are not "employees" for purposes of that statute (see Appellants' Brief in Carver at 18-42). Applying the "economic reality" test, this Court agreed with the Appellate Division that Carver qualified as an employee for FLSA purposes and was therefore entitled to receive the minimum wage for his labor (26 NY3d at 275-276, 280-285). Having rejected the respondents' sole argument for overturning the prior Appellate Division decision, we affirmed. Although we noted that the broader "gist" of Carver's FLSA claim was that "the State cannot retroactively deprive him of a minimum wage by recouping the funds through his lottery prize" (see id. at 284), we were not invited to opine on the legality of the reimbursement, nor did we do so. Indeed, resolving whether the State's reimbursement was lawful would have required us to consider 29 CFR 531.35 and case law interpreting that regulation, none of which is discussed or even cited in our opinion FN7 (see Matter of Empire Ctr. for N.Y. State Policy v New York State Teachers' Retirement Sys., 23 NY3d 438, 446 [2014] ["Our decisions are not to be read as deciding questions that were not before us and that we did not consider"]).
To be clear, we do not suggest that the reimbursement sought in Carver was permissible. A colorable argument can be made that when an employer uses an employee's subsequent earnings to reimburse itself for past minimum wage payments, the reimbursement operates as a "kick-back" of the minimum wage (see 29 CFR 531.35). On the other hand, at least one federal appellate court has ruled that, although 29 CFR 531.35 prohibits an employer from requiring an employee to return wages "delivered to the employee" (id.), it does not prohibit them from making equivalent deductions "from wages not delivered, that is, from future earned commissions that have not yet been paid," so long as those deductions do not cause the employee's earnings to fall below the minimum wage for the new period (see Stein v HHGREGG, Inc., 873 F3d 523, 531 [6th Cir 2017])FN8. Again, this Court in Carver simply did not [*5]decide whether the reimbursement of SNA from subsequent payments (there, the lottery prize) offended 29 CFR 531.35.
In any event, retroactive SSI awards are not comparable to lottery prizes and the other kinds of payments referenced in petitioners' briefs, such as inheritances, insurance recoveries, and personal injury awards. Entitlement to those categories of payments generally does not depend on whether the recipient already has sufficient resources to support their minimum basic needs. When the State uses such independently-owed funds to reimburse itself for the assistance it paid to WEP participants, the net effect is a loss to the WEP participants equivalent to the minimum wage.
SSI is inherently different because it is "paid solely on the basis of economic need" (White, 835 F2d at 975). The purpose of a retroactive SSI award, in particular, is to cover the otherwise unmet basic needs of an SSI claimant during the period in which their SSI application was pending, while simultaneously compensating states or localities that covered those needs until SSI eligibility was determined (see McKenzie, 787 F2d at 1223; Rivers, 692 F2d at 872; Matter of Rodriguez, 86 NY2d at 363). In the case of petitioners, their basic needs were largely fulfilled when New York awarded them interim assistance. The State has never attempted to claw back any of that assistance, which corresponded in value with the minimum wage for petitioners' WEP labor. The State has in fact transferred to petitioners the portion of their retroactive SSI awards representing the difference between the interim assistance they received from the State and the minimum basic income guaranteed by Congress. Petitioners thus have suffered no net loss: they have been paid all sums to which they are legally entitled, both for their work activities and their basic needs. Through the 42 USC § 1383 (g) reimbursement process, the State and federal governments simply adjusted as between themselves which party bore financial responsibility for "bring[ing] [petitioners' income] up to the minimum poverty level" during the periods in question (see Jackson, 683 F2d at 1082).
Petitioners and the dissent infer an FLSA violation from the fact that interim assistance recipients who are required to participate in WEPs ultimately receive the same total amount in State and federal benefits as individuals with the same underlying basic needs who were not required to work for their interim assistance (see dissenting op at 7-8). In their view, this equality of outcome establishes that WEP participants are not being fairly compensated for their labor. As discussed above, however, the end goal of SSI is to guarantee all qualifying individuals a fixed minimum income (see Hogan, 457 US at 581-582). It is therefore unsurprising that all interim assistance recipients with the same underlying basic needs ultimately receive the same total amounts. That result is not accomplished by taking anything from WEP participants; it stems from the State extending equal benefits to those who—on account of their illness, incapacity, age, or caregiver responsibilities—are exempted from a work requirement.
Petitioners' arguments are premised on the notion that they are entitled both to assistance from the State valued at the minimum wage and to a retroactive SSI award calculated as if none of their basic needs were satisfied by the State while their SSI applications were pending. As the Appellate Division correctly recognized, this would afford petitioners a windfall (see 230 AD3d at 882). Petitioners would receive duplicative government assistance payments, each corresponding to the same basic needs across the same period of time. "What is clear, however, is Congress' intent to prevent windfalls of benefits" (see White, 835 F2d at 978; McKenzie, 787 F2d at 1223; Pappas, 863 F2d at 229). Recognizing that the SSI program "contemplates shared federal and state responsibility for funding and administering benefits programs," federal courts have cautioned against arguments having "the result that the total federal and state benefit package would contain a windfall" (see White, 835 F2d at 978-979 [internal quotation marks omitted]). Receipt of both SSI and interim assistance creates a "windfall for claimants" because eligibility for both forms of aid depends upon a claimant's income "falling below a minimum subsistence level," and a delayed award of SSI allows a claimant to receive state aid that would not otherwise have been provided if the SSI had been paid on time (see Pappas, 863 F2d at 229).FN9
To resolve this problem, 42 USC § 1383 (g) expressly authorizes the government to withhold benefits payable to an applicant in "an amount sufficient to reimburse the State (or political subdivision) for . . . assistance financed from State or local funds and furnished for meeting basic needs" (42 USC § 1383 [g] [1], [3]). Petitioners do not dispute that SNA generally qualifies as interim assistance, or that 42 USC § 1383 (g) authorizes states to be reimbursed for interim assistance from a retroactive SSI award (see Rodriguez, 86 NY2d at 363). Instead, petitioners effectively ask us to read an exception into 42 USC § 1383 (g) for interim assistance that is conditioned on participation in work activities. But the plain language of the statute does not distinguish between assistance that is conditioned on work activities and assistance that is not so conditioned (e.g., because the recipient is unable to work)FN10. Nor is there an obvious reason why Congress would have wished to distinguish between the two types of assistance. Both fulfill the same portion of an SSI applicant's basic needs during the relevant waiting period, which the federal government would otherwise be financially obligated to cover.FN11
Moreover, if we were to construe State payments to WEP participants as falling outside the statutory definition of interim assistance, it would call into question whether such payments need to be accounted for at the SSI eligibility and benefits-calculation stage as well. After all, the provision defining interim assistance and the provisions defining income for eligibility and benefits-calculation purposes use parallel language (compare 42 USC § 1383 [g] [3] [defining interim assistance as state or local assistance "furnished for meeting basic needs"], with id. § 1382a [b] [6] [excluding from the definition of income any assistance "which is based on need and furnished" by any state or locality]). To prevent the windfall to claimants discussed above, the Social Security Administration might elect to treat the minimum wage a WEP participant receives as "income" for purposes of determining their eligibility for SSI, and to reduce their SSI benefit by an equivalent amount. In that event, neither New York nor WEP participants would receive the funds in dispute here. For all of these reasons, we agree with the courts that have concluded that "interim assistance" includes assistance conditioned on work activities (see e.g., Johns v Stewart, 57 F3d 1544, 1555-1556 [10th Cir 1995] ["Simply because participants perform a work component as one requirement of their assistance plans does not change the nature of the assistance provided to them to meet their basic needs"];FN12Whitaker v California Dept. of Social Servs., 2010 WL 4403317, 2010 Cal App Unpub LEXIS 8861, at *10-16 [Nov. 8, 2010, No. A126704] [similar]).
Finally, to the extent there is a conflict between the interim assistance reimbursement process laid out in 42 USC § 1383 (g) and the minimum wage requirement of the FLSA, it does not inexorably follow that the latter supersedes or preempts the former and precludes New York from reimbursing itself for interim assistance paid to WEP participants. In the event of a conflict between two federal laws, the ordinary rule is that the more "specific" law governs FN13 (see Edmond v United States, 520 US 651, 657 [1997]). In our view, 42 USC § 1383 (g) is more [*6]specific with respect to the circumstances in which a state may be reimbursed for interim assistance. In truth, however, we see no conflict here, because the SSI program, SNA program, and FLSA are each designed with essentially the same goal in mind: to afford individuals a minimum subsistence income covering their basic needs (see Hogan, 457 US at 571, 581-582; D.A. Schulte, Inc., 328 US at 116; 18 NYCRR 353.2 [a] [2] [i]). Through a combination of State work opportunities and additional federal welfare payments, petitioners had their basic needs met during the periods in which their SSI applications were pending, and received the minimum wage for their labor. They are not entitled to funds that Congress earmarked for states to encourage them to do precisely what New York did here.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
TROUTMAN, J. (Dissenting):

Under the State's current policy, which the majority approves, a person who is required to perform labor in exchange for their interim assistance benefits receives no more than a person who receives interim assistance benefits without working. In my view, our decision in Matter of Carver v State of New York (26 NY3d 272 [2015]) is controlling and mandates the conclusion that the State's policy, which provides no credit for labor performed, violates the federal Fair Labor Standards Act (FLSA). I therefore respectfully dissent.
I.
The majority opinion contains an accurate and thorough discussion of the relevant facts and statutory schemes with which I have no quarrel (see majority op at 2-9). I disagree, however, with the majority's conclusion that Carver is distinguishable (see id. at 10-13).
Mr. Carver was, like the petitioners here, a recipient of state-funded Safety Net Assistance (SNA) benefits. Also like the petitioners here, Mr. Carver was required to perform labor in a work experience program (WEP) "in order to receive public assistance benefits" (Carver, 26 NY3d at 276). Mr. Carver performed such labor from 1993 to 2000, sorting mail at Coney Island Hospital and sweeping floors and picking up trash at the Manhattan Terminal of the Staten Island Ferry (see id.). In accordance with Social Services Law § 336-c (2) (b), Mr. Carver's cash compensation in the form of SNA benefits plus his food stamps "equaled the minimum wage for the amount of hours that he worked" (see id. at 276, 284-285). His SNA benefits were terminated in 2000 (see id. at 276).
In 2007, Mr. Carver won a $10,000 prize in the state lottery. Social Services Law § 131-r (1) "authorizes the State to appropriate half of any lottery prize over $600 to reimburse [itself] . . . for all . . . public assistance benefits paid to [the prizewinner] during the previous ten years" (id. [internal quotation marks omitted]). The State Office of Temporary and Disability Assistance (OTDA) therefore recouped $5,000 from Mr. Carver's lottery prize (see id.). Mr. Carver commenced a CPLR article 78 proceeding, contending that
"the interception of his lottery winnings violated his rights under the FLSA and the New York State Minimum Wage Act (Labor Law § 652). Specifically, Carver contended that the OTDA required him to work 35 hours per week in order to receive public assistance benefits, and that his biweekly cash benefits, plus the value of the food stamps he received, equaled no more than the federal or New York State minimum wage. Thus, were OTDA permitted to recoup a portion of the benefits paid to him through Social Services Law § 131-r, then Carver would be paid less than minimum wage, in violation of the FLSA." (id. at 276-277).
This Court agreed with Mr. Carver's position and held that the State was not permitted to recoup $5,000 from Mr. Carver's lottery prize because doing so would violate the FLSA (see id. at 278-285). It is true, as the majority states, that the primary issue before the Court was whether Mr. Carver qualified as an employee of the City under the FLSA, and the Court concluded that he did (see id. at 280-284). But after agreeing with Mr. Carver that he was an employee, the Court stated: "The gist of Carver's argument is that he is entitled to minimum wage for his hours worked as a participant in the WEP program, and that the State cannot retroactively deprive him of a minimum wage by recouping the funds through his lottery prize. Carver's request is actually consistent with the current practice" (id. at 284). The Court then cited Social Services Law § 336-c (2) (b), which requires the number of hours that a WEP participant works to be limited to that which would compensate the WEP participant for the minimum wage value of their labor through the SNA benefits (see id. at 284-285, quoting Social Services Law § 336-c [2] [b]).
The inescapable result of Carver is that even though Mr. Carver was able to keep all the SNA benefits provided to him, the Court nevertheless held that the State's attempt to recoup funds from his subsequent lottery prize would violate the FLSA because it would "retroactively deprive him of a minimum wage" (id.). The same analysis applies here. Petitioners were able to keep all of the SNA interim assistance benefits they were provided by the State. But by recouping all of the interim assistance benefits from petitioner's initial retroactive lump sum Supplemental Security Income (SSI) benefits, the State is retroactively depriving petitioners of a minimum wage.
II.
The majority offers three reasons why, in its view, Carver is not controlling. First, the majority asserts that the sole issue before the Court was whether Mr. Carver was an employee of the City, and the Court was not "invited to opine on the legality of the reimbursement, nor did we do so" (majority op at 11-12). That is an odd reading of Carver. If the Court had determined only that Mr. Carver was an employee for FLSA purposes and did not opine on the legality of the reimbursement, the Court would have simply ended its analysis after concluding that Mr. Carver was an employee. But contrary to the majority's assertions, this Court concluded that Mr. Carver was entitled to minimum wage and that the State's recoupment of the lottery prize would retroactively deprive Mr. Carver of minimum wage (see Carver, 26 NY3d at 284-285).
Indeed, as the majority acknowledges, the Court in its opinion expressly noted that upon remittal from the Appellate Division's decision, "Supreme Court granted Carver's petition against OTDA and its Commissioner, and directed respondents to return his $5,000. The parties then entered into a stipulation and order of contingent settlement which resolved all outstanding issues, including attorney's fees" (Carver, 26 NY3d at 278). This Court granted OTDA "leave to appeal from the stipulation and order of contingent settlement . . . bringing up for review the prior, nonfinal Appellate Division order" (id.). The Court framed the issue on appeal as "whether as a result of his participation in WEP as a condition of his receipt of public assistance benefits under Social Services Law § 336 (1) (d), Carver was entitled to minimum wages under the FLSA" (id.), not whether Mr. Carver was an employee under the FLSA. Notably, even the majority does not assert that the reimbursement at issue in Carver was permissible, despite its assertion that the legality of the reimbursement was not before the Court (see majority op at 12).
Second, the majority asserts that even if the reimbursement in Carver was not permissible under the FLSA, then Carver remains distinguishable because "retroactive SSI awards are not comparable to lottery prizes" (id. at 13). The majority reasons that lottery prizes, personal injury awards and the like are "independently-owed funds," and [*7]therefore recoupment from those sources results in a "loss to the WEP participants equivalent to the minimum wage" (id. at 13). The majority reasons that retroactive SSI benefits, by contrast, are designed to cover the unmet needs of an SSI claimant while their application is pending, the same purpose that SNA interim assistance is designed to fulfill (see id. at 13-14). To allow petitioners to keep both the SNA interim assistance benefits and the retroactive SSI award would, in the majority's view, result in a "windfall" to petitioners because they would receive "duplicative government assistance payments, each corresponding to the same basic needs across the same period of time" (id. at 15). In other words, the majority concludes that to allow petitioners to keep both would allow, as the Appellate Division put it, "double dipping" (230 AD3d 880, 882 [3d Dept 2024]). All that is really happening, the majority states, is that "the State and federal governments simply adjusted as between themselves which party bore financially responsibility" for paying benefits while the SSI application is pending (majority op at 14).
A simple comparison of the funds received by a WEP participant and an interim assistance recipient who does not work illustrates the fallacy of this argument. Using the example cited in the Appellate Division decision:
"an individual . . . receives $14,000 in interim assistance while waiting 28 months for the Social Security Administration to render a determination on his or her SSI application. The interim assistance recipient performs unpaid work under a WEP during that period and would have received $11,200 had a minimum wage been paid for that work. The SSI application is then approved and an initial lump sum retroactive payment of $16,800 is made, at which point the State seeks and obtains reimbursement for the $14,000 in interim assistance benefits. The benefits recipient has received $14,000 in interim assistance benefits for the 28-month pendency of the SSI application—an amount that includes the value of his or her work—and retains that money. The only effect of the recoupment upon the recipient is to reduce the retroactive SSI payment to account for the duplicative interim assistance payments for those 28 months, preventing the recipient from 'double dipping' and receiving both interim assistance benefits and SSI benefits during that period." (230 AD3d at 881-882).
In this example, the WEP participant who is required to perform labor in exchange for the interim assistance benefits receives a total of $16,800: $14,000 in interim assistance benefits (which the WEP participant keeps), plus the remaining $2,800 from the retroactive lump sum SSI award after the State reimburses itself for the $14,000 it paid in interim assistance.
But, as all parties to this appeal agree, the federal government is indifferent to whether a recipient of state interim assistance performs labor in exchange for benefits. Federal law authorizes states to reimburse themselves for interim assistance provided from the initial retroactive SSI award regardless of whether the interim assistance was conditioned upon the performance of labor (see 42 USC § 1383 [g]). Thus, consider an example using the same sums as the earlier example, but this time, the interim assistance recipient is not required to perform labor in exchange for benefits. That individual likewise receives $14,000 in interim assistance benefits from the state and also receives an initial retroactive lump sum SSI award of $16,800. The state also obtains reimbursement for the $14,000 paid in interim assistance from that initial SSI award. The interim assistance recipient in this example therefore receives a total of $16,800: $14,000 in interim assistance benefits (which the recipient keeps), plus the remaining $2,800 from the retroactive lump sum SSI award after the state reimburses itself for the $14,000 it paid in interim assistance.
Therein lies the problem with the State's policy under the FLSA. Both a WEP participant who is required to perform labor in exchange for interim assistance benefits and an individual who is required to perform no labor whatsoever in exchange for interim assistance benefits receive the same amount. The State provides no credit to the WEP participant for the minimum wage value of their labor when calculating the amount to be reimbursed from the initial SSI award. If the State were to provide such a credit, as petitioners argue is required under the FLSA, the WEP [*8]participants would not be "double dipping." Instead, they would merely be compensated for the minimum wage value of their labor. As Supreme Court reasoned below,
"petitioners have not simply received [interim assistance] benefits as an advance on their SSI so that they can keep body and soul together while they await the results of their SSI application. They have also performed work in exchange for these benefits. And under Matter of Carver, this entitles them to FLSA-level compensation."
The State's current policy, which the majority now affirms, allows the state to pay nothing to WEP recipients for their labor. The State is reimbursed in full for the value of the interim assistance it provides, regardless of whether the benefits recipient has provided labor. And a WEP participant receives the same total amount in benefits as an interim assistance recipient who provides no labor at all. This result cannot be reconciled with the FLSA and our decision in Carver. The State has already been "reimbursed" for the interim assistance benefits through the minimum wage value of the WEP labor. It cannot reimburse itself again by recouping the amount of interim assistance from the initial SSI award. The result of the current policy is a windfall for the State, which receives WEP labor for free.
Finally, the majority asserts that if WEP participants were fairly compensated for the minimum wage value of their labor, their interim assistance benefits might be treated as "income" for the purposes of determining SSI eligibility, thereby reducing their SSI benefits. Similar arguments were made to this Court in Carver. There, counsel for the State argued that if the Court treated WEP participants as employees, interim assistance benefits would be treated as "wages" that were then taxable, subject to wage garnishment, and qualified as income (Matter of Carver Oral Argument Transcript, Sept. 16, 2015, at 9-12)FN1. That these hypothetical problems have not come to pass in the 10 years since this Court decided Carver suggests that an amendment of the State's policy to comply with the FLSA and Carver would also not lead to such results.
III.
The State has other methods by which a recipient of interim assistance benefits can fulfill a work activities requirement that would likely not implicate the FLSA, including training and education (see Social Services Law § 336; 18 NYCRR 385.9). The State therefore has other options if it does not wish to provide WEP participants with the minimum wage value of their labor. Fortunately (although not for petitioners here), the parties appear to agree that a scenario in which an SSI applicant is required to work in a WEP in exchange for interim assistance benefits is rare. New York law prohibits the State from requiring people who are ill, elderly or disabled from being required to participate in work activities (see Social Services Law §§ 332 [1] [a]; 332-b [1] [a]). The State asserts, and petitioners agree, that individuals with pending SSI applications can be required to work in a WEP only after a fair hearing, and that it appeared that in these cases, the local social services districts did not know that petitioners had applied for SSI. The class of WEP participants who are being deprived of the minimum wage value of their labor through the State's policy is therefore hopefully a small few.
Order affirmed, without costs. Opinion by Judge Cannataro. Judges Rivera, Garcia and Singas concur. Judge Troutman dissents in an opinion, in which Chief Judge Wilson and Judge Halligan concur.
Decided May 26, 2026

Footnotes

Footnote 1
The Social Security Administration may only do so if it has first entered into an interim assistance agreement with the state or locality authorizing such reimbursement, and if the claimant themself has given written authorization (42 USC § 1383 [g] [4]; 20 CFR 416.1901, 416.1904, 416.1910). There is no dispute that these conditions were fulfilled here.

Footnote 2
Other types of work activities to which a recipient may be assigned include on-the-job training, vocational training, education related to employment, and job search and job readiness activities (see Social Services Law § 336).

Footnote 3
At oral argument, the State represented that SNA recipients who have applied for SSI generally are not required to work in exchange for their benefits. In petitioners' cases, however, it appears that the State did not become aware of their SSI applications until sometime after petitioners were assigned to WEPs. The parties agree that the class of individuals in petitioners' position is small.

Footnote 4
More specifically, petitioner Lynda Ohlsson received $8,750.25 in SNA. After that amount was deducted from her $10,753 retroactive SSI award, Ohlsson was left with $2,002.75 in SSI to cover her unmet basic needs for the period during which her application was pending. Petitioner Tarrence Ash received $3,520 in SNA. After that amount was deducted from his $5,940 retroactive SSI award, Ash was left with $2,420 in SSI to cover his unmet basic needs for the period during which his application was pending.

Footnote 5
This litigation was originally commenced by non-appealing petitioner Danny Andersen.

Footnote 6
Supreme Court also concluded that the FLSA claim failed to state a cause of action because Carver was not "engaged in commerce," and because he had "implicitly agreed" to reimbursement when he purchased the lottery ticket (42 Misc 3d at 608-609 [internal quotation marks omitted]).

Footnote 7
See e.g., Mayhue's Super Liq. Stores, Inc. v Hodgson, 464 F2d 1196, 1197 (5th Cir 1972) ("An agreement that an employee will repay to his employer any shortages in money entrusted to him, when shortages occur through misappropriation, theft, or otherwise, violates the minimum wage requirements of the [FLSA] to the extent that such required payments reduce below the minimum wage the amount of money and compensation which the employee receives"), cert denied 409 US 1108 [1973]; Cao v Wu Liang Ye Lexington Rest., Inc., 2010 US Dist LEXIS 109373, 2010 WL 4159391, at *3 (SD NY Sept. 30, 2010, No. 08 Civ 3725) (an employer may not require that their employees give back tips if doing so results in their compensation falling below the minimum wage).

Footnote 8
Compare 29 CFR 531.35 (listing as an example of a kick-back "a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work"; in that case "there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act" [emphasis added]).

Footnote 9
Here, for example, petitioners would not have been entitled to any assistance from the State—conditioned on work activities or otherwise—had their SSI applications been immediately approved (Social Services Law § 158 [2]).

Footnote 10
Nor do the applicable federal regulations make such a distinction (see 20 CFR 416.1124 [c] [2] [explaining that "(a)ssistance is based on need when it is provided under a program which uses the amount of your income as one factor to determine your eligibility"]).

Footnote 11
To the extent Congress's "indifferen[ce] to whether a recipient of state interim assistance performs labor in exchange for benefits" leaves the State with a kind of windfall (dissenting op at 7-8), it comes at the expense of the federal government and is for Congress to address, not petitioners through an FLSA claim.

Footnote 12
The Tenth Circuit in Johns went on to reject the plaintiff's FLSA claim on the ground that public assistance recipients who are required to work in return for their benefits are not employees for FLSA purposes (see 57 F3d at 1557-1559). This Court explicitly disagreed with Johns on that point in Carver (see 26 NY3d at 279-280), as have other federal courts (see e.g., United States v City of New York, 359 F3d 83, 94 [2d Cir 2004]). Nonetheless, we agree with Johns that nothing in the language of 42 USC § 1383 indicates "that Congress intended to restrict the definitional scope of [interim assistance] to exclude benefits provided to 'workfare' participants" (Johns, 57 F3d at 1556).

Footnote 13
In contrast, the statute at issue in Carver was Social Services Law § 131-r, which the Supremacy Clause of the United States Constitution renders subordinate to the FLSA.

Footnote 1
Available at https://www.nycourts.gov/ctapps/arguments/2015/Sep15/Transcripts/091615-139-Oral-Argument-Transcript.pdf.